CHICAGO CITY BANK AND TRUST COMPANY, Plaintiff-Appellee, *v.* TIMOTHY ANDERSON, Defendant-Appellant.

(No. 58685;

First District (2nd Division)—February 4, 1975.

Edwards, Haney, Singer & Stein, of Chicago, for appellant.

Norman Wexler, of Wexler, Wexler & Heller, Ltd., of Chicago, (Thomas Donnelly, Jr., of counsel), for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

On 23 April 1968, Timothy Anderson (hereinafter defendant) executed an installment negotiable promissory note for $3,774.00 to Mars Oldsmobile for the purchase of a 1967 Toronado. The note contained a confession-of-judgment clause. The note was subsequently negotiated to Chicago Bank and Trust Company (hereinafter plaintiff), and the monthly payments on the note were made by defendant to plaintiff. On 4 November 1971, with $611.00 indebtedness past due on the note, the automobile was repossessed by Joe's Auto Rebuilders on behalf of plaintiff. On that same day, plaintiff sent a notice of repossession by registered mail, and a copy of the notice by first-class mail, to the last address which plaintiff had for defendant. Both the notice and the copy of the notice were returned, undelivered, to the plaintiff. The notice provided that defendant could redeem the automobile until 18 November 1971, after which date the automobile would be sold without further notice, with an accounting to be made to defendant for any excess in the funds from the sale after payment of the balance of the indebtedness. On 7 January 1972, defendant received a letter from plaintiff (which had been sent to the same address as that to which the notices of repossession had been sent) stating that the automobile had been repossessed on 4 November 1971, and had subsequently been sold for $125.00. Crediting this $125.00 against the $611.00 still owing, plaintiff's letter informed defendant that he still owed $486.00.

On 18 April 1972, plaintiff filed suit against defendant in the circuit court of Cook County, confessing judgment on defendant's part and alleging a balance due from defendant of $486.00 and attorney fees of $80.40, for a total of $566.40. On 20 April 1972, a judgment was entered on the confession for $566.40, and, on 15 May 1972, that judgment was confirmed upon defendant's failure to appear. One week later, an affidavit

for a wage-deduction order was filed against defendant's employer, International Harvester Company, and an order was entered awarding plaintiff $79.12. A second affidavit for a wage deduction order was filed on 30 June 1972 with a return date of 9 August 1972.

On 27 July 1972, defendant's motion to reopen the judgment by confession and to continue generally the wage deductions was granted. Defendant filed an answer and later filed a motion for leave to amend his answer by adding a counterclaim, which motion was allowed. Plaintiff thereafter moved to strike defendant's counterclaim. On 5 October 1972, an order was entered granting plaintiff's motion to strike the counterclaim. Defendant's motion to reconsider the order striking the counterclaim was denied on 20 November 1972, and that same day the case proceeded to trial. The parties stipulated at trial that "since the purchase price of the automobile in question was $3740.00 and that defendant had paid $3258.00 that the sole issue was whether the automobile in question was repossessed 'in ordinary condition and free from malicious damage' pursuant to [Ill. Rev. Stat. 1971] ch. 121½, par. 580 Ill. Rev. Stat." The statutory provision referred to is as follows:

> "Upon default by the buyer under a retail installment contract the parties have the rights and remedies provided in Article 9 of the Uniform Commercial Code. If the buyer has paid an amount equal to 60% or more of the deferred payment price at the time of his default under the contract and if the buyer, at the request of the holder and without legal proceedings, surrenders the goods to the holder in ordinary condition and free from malicious damage, the holder must, within a period of 5 days from the date of receipt of the goods at his place of business, elect either (a) to retain the goods and release the buyer from further obligation under the contract, or (b) to return the goods to the buyer at the holder's expense and be limited to an action to recover the balance of the indebtedness."

At trial plaintiff's agent, Herbert Dalleck, testified that the vehicle in question was repossessed on 4 November 1971 and that he first saw the vehicle on 20 November 1971. Though he had no independent recollection of that car, Mr. Dalleck could vouch for the accuracy of a report which he had written on 20 November 1971. That report was admitted into evidence, and indicated that, when the car was examined on 20 November 1971, the front fenders and front doors were damaged, the tires were poor, the exterior was rough, the upholstery was torn and dirty, and the bumpers were in disrepair. Mr. Dalleck testified that the retail value of a 1967 Oldsmobile Toronado on 16 December 1971 (the

date of this car's sale after repossession) was $2,000.00, and the wholesale value was $1,500.00. Mr. Dalleck also testified that he had been present at the sale of the car, and had received $180.00 for the car.[1]

The defendant testified that, prior to its repossession, the car was in good condition. Prior to repossession there was nothing wrong with the fenders, doors, exterior, upholstery, or bumpers. Eugene Cunningham, defendant's nephew, testified on behalf of defendant that he had driven the car on the day prior to its repossession and at that time the car was in good condition and not in the condition to which Mr. Dalleck had testified. In fact, Mr. Cunningham had offered to buy the car from defendant at a price equal to the balance of the installment payments due. Edward Moore, the defendant's friend, testified on behalf of defendant that he saw the car on 1 November 1971, and that it was then in good, undamaged condition.

On 20 November 1972, after argument, the court ordered the judgment by confession (which had been entered on 20 April 1972) confirmed in the sum of $566.40, together with the additional costs expended by plaintiff. Defendant's present appeal prays for reversal of the confirmation of the judgment of 20 April 1972 on 20 November 1972 in favor of plaintiff, and for a reversal of the denial on the same date of defendant's motion to reconsider the order of 5 October 1972 striking his counterclaim, and for a remand of the cause for a new trial with a direction to allow the filing of defendant's counterclaim.

We will first consider issues raised by defendant's attack on the judgment against him, and then we will consider the issues raised by defendant's attack on the dismissal of his counterclaim.

Defendant's attack on the judgment rendered against him is predicated on the contention that section 20 of the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1971, ch. 121½, par. 580) is applicable in this case, and that this statutory provision supersedes the terms of section 9—504 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—504). Section 20 sets forth the remedies available to the seller upon default by the buyer under a retail installment contract sale of a motor vehicle. While section 20 prescribes generally that the rights and remedies upon default will be those provided in article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—101 et seq.), the section provides a specific limitation upon the remedies under article 9.

Section 9—503 of the Uniform Commercial Code gives a secured party

---

[1] There is nothing in the record to explain the inconsistency, as to the amount received by plaintiff upon its sale of the repossessed car, between the amount testified to by Mr. Dalleck and the amount recited in plaintiff's letter to defendant dated January 7, 1972.

the right to take possession of the debtor's collateral upon the debtor's default, unless the parties otherwise agree; section 9—504 of the Uniform Commercial Code gives a secured party the additional right to dispose of the collateral and apply the net proceeds of the disposition against the indebtedness, while still holding the debtor liable for any deficiency. By way of contrast, section 20 requires that, in retail installment sales contracts involving motor vehicles, once certain conditions precedent have been met, an election must be made by a repossessor after default by the buyer either to retain the car and release the buyer from any further obligation under the contract, or to return the car to the buyer at the holder's expense and be limited to an action to recover the balance of the indebtedness.

■■ A provision of our Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—203(4)) expressly directs that, where there is any conflict between the provisions of article 9 of the Uniform Commercial Code and the provisions of the Motor Vehicle Retail Installment Sales Act, the provisions of the latter statute shall apply. The provision of section 20 requiring, under certain circumstances, an election between two alternative remedies is in conflict with the cumulative remedies provided in article 9, and therefore plaintiff in this case is limited to the election required by section 20, if the conditions precedent to the applicability of section 20 have been met.

The first condition precedent to the required election of remedies in section 20 is that the buyer [at the time of his default under the contract] must have paid an amount equal to 60% or more of the deferred payment price. It is uncontested here that defendant had paid more than the required 60% at the time of default. The second condition precedent is that the buyer, at the request of the holder and without legal proceedings, surrender the goods to the holder in ordinary condition and free from malicious damage.

As to this second condition precedent, defendant testified that, prior to repossession, the car was in good condition. Defendant's nephew testified that he drove the car on the day prior to the repossession and that it was then in good condition. A third witness, defendant's friend, testified that he saw the car some 3 days prior to repossession and that it was then in good, undamaged condition. The sole witness for plaintiff, plaintiff's agent, had no independent recollection of the car or of its condition, but could testify to the car's poor condition from a report written by him and based on his observations of the vehicle 16 days after repossession. The report was admitted into evidence. Neither the report nor the testimony of plaintiff's witness from the report purports to contain information as to the car's condition at the time of repossession.

Plaintiff's witness did not claim to know the condition of the car at the time of repossession, as he admits that he had not seen the car until it had been under plaintiff's control for 16 days. Hence, there is no evidence in the record that the car was not in ordinary condition at the time of repossession, nor is there any evidence attributing malicious damage to defendant; on the other hand, there is evidence in the record that the car was in ordinary condition at that time.

■■ Despite the stipulation at trial that the sole issue on trial was whether the automobile was repossessed in ordinary condition and free from malicious damage, plaintiff now contends that the required election of section 20 does not apply to him because defendant did not "surrender" the vehicle as section 20 required. Section 20 speaks to the situation where "* * * the buyer, at the request of the holder and without legal proceedings surrenders the goods * * *." Clearly defendant could not technically have surrendered the goods "at the request of the holder", since there was no such request. If the applicability of section 20 requires such a surrender *only after request*, the statutory protection afforded to the buyer by the required election of remedies would be thwarted, since the creditor could always avoid the election by repossessing *without a request* for the goods. Having taken the goods without request, plaintiff may not now assert that defendant had no intention to voluntarily surrender the goods. Creditors may repossess goods without judicial process only if this can be done without a breach of the peace (Ill. Rev. Stat. 1971, ch. 26, par. 9—504); the validity of the repossession in this case rests upon the car being "surrendered" without any threatened breach of peace. There is no evidence of any resistance by defendant to the repossession of the car, and he had been given no opportunity voluntarily to surrender it. We conclude that there is no merit to plaintiff's contention as to the absence of a "surrender" under the circumstances.

To summarize the evidence as to the "ordinary condition" of the car at the time of repossession: defendant testified that it was then in ordinary condition, and his testimony was substantially corroborated by the testimony of two other witnesses. Plaintiff introduced no testimony whatever as to the condition of the car *at the time of repossession;* plaintiff's testimony related solely to its condition 16 days after it had been repossessed, when it had been in the possession of plaintiff or of an agent of plaintiff during all that period of time; and there was no testimony to relate its condition at that time to its condition at the time of repossession. Assuming, without deciding, that defendant had the burden of proving the ordinary condition of the car at the time of repossession, the

testimony offered by him and on his behalf sustains that burden and there is no relevant counter testimony.

On this state of the record, the only possible finding as a matter of law is that the car *was* in ordinary condition at the time of its repossession.

■■ We conclude that the conditions precedent to the required election of remedies under section 20 were proved to have been substantially complied with. We hold that plaintiff, by selling the car rather than returning it to defendant, made the election to retain the goods and release the buyer from further obligation under the contract. The judgment for plaintiff, based on the contract indebtedness, must therefore be reversed.

We turn next to the issues raised by defendant's attack on the dismissal of his counterclaim. Count I of defendant's counterclaim alleges that, as a result of plaintiff's violation of section 20, defendant has had to utilize alternative means of transportation, has lost considerable time from work, and has suffered prolonged and serious emotional distress. Section 9—203(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—203(2)) provides that failure to comply with the Motor Vehicle Retail Installment Sales Act will have only the effect that is *specified therein.* The obvious remedial effect specified in section 20 is that the repossessor is restricted as to the courses of action which he would otherwise have had available to him under article 9. The only penalty provision in the Motor Vehicle Retail Installment Sales Act is section 24, which provides that a person who knowingly violates the Act is guilty of a misdemeanor, and that no person violating this Act, except as a result of an accident or bona fide error of computation, may recover any finance charge, any delinquency or collection charge or any refinance charge in connection with the related retail installment sales contract. No section of the Motor Vehicle Retail Installment Sales Act provides that violation of section 20 shall have the effect of giving rise to a legal action for consequential damages. Therefore, Count I, based on consequential damages resulting from violation of section 20, fails to state a cause of action.

Count II of defendant's counterclaim alleges serious and irreparable harm resulting from plaintiff's failure to give reasonable notice of the time and place of any public sale, or reasonable notification of the time after which any private sale or other disposition occurred, as required by section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—504(3)). Count IV of the counterclaim alleges serious and irreparable harm as a result of plaintiff's failure to sell the car in conformity with reasonable commercial practices and in a commercially reasonable manner, as required by section 9—501(2) of the

Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, par. 9—501(2)). Count II and Count IV fail to state causes of action. Having successfully contended that this case falls within the purview of section 20, and that plaintiff was bound to retain the car and to forego an action on the indebtedness, defendant cannot now complain that he was not properly notified of the subsequent sale of the car or that the subsequent sale was commercially unreasonable. What plaintiff subsequently does with the car he has opted to retain is of no concern to defendant.

■■ Count III of the counterclaim asserts two different theories of recovery. The first theory alleges that, since the judgment for indebtedness against defendant is invalid, the garnishment judgment must likewise be invalid. We construe this allegation as a request for common law restitution, based on unjust enrichment, to recover from the plaintiff any sum which plaintiff has obtained as a result of garnishment proceedings grounded on the confession judgment in this case. Defendant is entitled to recover such sums, because, once plaintiff elected to retain the car, the indebtedness was extinguished.

■■ The second theory of Count III, based on section 17 of "An Act relating to wage deductions * * *" (Ill. Rev. Stat. 1971, ch. 62, par. 87), alleges loss of time and money in consulting with attorneys, and prolonged and serious emotional distress and anguish in that plaintiff wrongfully caused a summons to issue for a deduction order. The Historical and Practice Note to this statutory section provides that its purpose is "* * * to supply an effective means of enforcing the legislative mandate that no wages of any employee shall be subject to judicial seizure except upon a judgment rendered after an opportunity to defend upon the merits". (Ill. Ann. Stat. ch. 62, par. 87, at 863 (Smith-Hurd 1972).) In the present case the original confession judgment of 20 April 1972 was confirmed on 15 May 1972, when defendant failed to appear. Only thereafter on 22 May 1972 did plaintiff file an affidavit against defendant's employer, and obtain an order for use by plaintiff awarding $79.12. Defendant had had an opportunity to defend the judgment against him, and, when defendant finally moved to reopen the judgment by confession on 27 July 1972, defendant's motion to continue generally the wage deduction proceedings was allowed. Therefore, even though the original judgment has subsequently been opened up and reversed, defendant, having had an opportunity to defend against the judgment and to avoid wage deduction, does not have a cause of action for damages for wrongful issuance of summons as set out in section 17 of "An Act relating to wage deductions * * *" (Ill. Rev. Stat. 1971, ch. 62, par. 87).

Count V of defendant's counterclaim prays that sections 9—503 and 9—504 of the Uniform Commercial Code (Ill. Rev. Stat. 1971, ch. 26, pars. 9—503, 9—504) be declared invalid and unconstitutional as violative of due process, and that plaintiff be enjoined from repossessing or selling articles pursuant to the authority of these sections. Defendant does not claim to have *other* dealings with plaintiff subject to these two statutory sections, and it is therefore evident that the declaratory and injunctive relief requested would be a useless act. See *Mojica v. Automatic Employees Credit Union* (N.D. Ill. 1973), 363 F. Supp. 143.

In conclusion, Counts I, II, and IV of defendant's counterclaim fail to state a cause of action and were properly stricken. Count III of the counterclaim is construed as raising a valid claim for common law restitution of the $79.12 obtained by plaintiff through garnishment proceedings, but otherwise fails to state a cause of action under section 17 of "An Act relating to wage deductions * * *" (Ill. Rev. Stat. 1971, ch. 62, par. 87). Count V of the counterclaim requests relief that would not benefit plaintiffs and was therefore properly stricken.

For the foregoing reasons the judgment against defendant is reversed and the ancillary garnishment judgment for the use of plaintiff in the amount of $79.12 is vacated, and the cause is remanded with instructions to dismiss all pending garnishment proceedings for the use of plaintiff and to enter judgment for defendant on his common law restitution count for any sum which plaintiff has obtained as a result of garnishment proceedings based on the confession judgment in this case.

Judgment for plaintiff reversed; garnishment judgment for use of plaintiff vacated; cause remanded with directions.

DOWNING, P. J., and STAMOS, J., concur.