BOULEVARD BANK, N.A., Plaintiff and Counterdefendant-Appellee, v. ELIZABETH MOORE, Defendant and Counterplaintiff-Appellant (Roosevelt Moore, Defendant).

First District (1st Division)   No. 1—93—1084

Opinion filed March 27, 1995.

Legal Assistance Foundation of Chicago, of Chicago (James O. Latturner and Jeffrey C. Boulden, of counsel), for appellant.

Grochocinski & Grochocinski, Ltd., of Palos Heights (Mark Steven Grochocinski, of counsel), for appellee.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant and counterplaintiff Elizabeth Moore appeals an order of the circuit court of Cook County entering judgment in favor of plaintiff and counterdefendant Boulevard Bank, N.A. (Bank), in an action arising out of a motor vehicle retail installment sales contract between the Bank, Ms. Moore, and defendant Roosevelt Moore, who co-signed Ms. Moore's car loan.

The record on appeal indicates the following facts. On August 1, 1987, Ms. Moore entered into a motor vehicle retail installment sales contract financed through the Bank. This contract gave the Bank a security interest in the automobile and provided for repossession of the automobile in the event of default. The record indicates that the contract was for a 1987 Dodge Shadow, that defendants made a down payment of $2,000 and financed $11,414.76 resulting in a total sale price of $18,211.40 including interest.

Ms. Moore testified that she fell behind in her car payments in September 1990, due to lack of work at her nursing agency. In November 1990, the automobile was repossessed at her home, located at 641 W. 64th Street in Chicago. Ms. Moore cooperated with the repossessors and gave the car keys to a man who represented that he worked for the Bank. Ms. Moore testified that the car was in good condition at the time and that it had suffered no malicious damage.

Maria Keler Peterson testified that she was the repossession and bankruptcy coordinator for the Bank in the fall of 1990. Peterson testified that the Bank mailed several notices to Ms. Moore regarding the repossession of the automobile and Ms. Moore's rights thereafter. Peterson then referred to a number of joint exhibits in her testimony. These exhibits, which had previously been stipulated to by the parties, were dated November 3, 1990, included: (1) a cover letter; (2) a notice of private sale of repossessed vehicle; (3) a notice of intent to the debtor; and (4) a notice of right to recover vehicle. Another joint exhibit was identified by Peterson as copies of the envelopes that were sent certified mail and returned "attendant not known." Although these exhibits are not included in the record on appeal, the comments of the trial court and counsel, together with the examination of Peterson and Ms. Moore, indicate that the notices were mailed to an address at 641 W. 69th Street instead of Ms. Moore's residence on 64th Street. Peterson testified that this was apparently a typographical error.

John Childless testified that in February 1991, he was the recovery specialist for the Bank. Childless testified that Ms. Moore had paid over 60% of the deferred payment price of the automobile before it was repossessed by the Bank. Childless identified an exhibit as a statement of sale dated February 4, 1991. Ms. Moore testified that she received this statement. The statement indicated a deficiency of $2,641.37 after the automobile was sold for $2,250.

The parties also stipulated to a letter from the Bank's attorney to Ms. Moore and Roosevelt Moore, dated May 29, 1991, demanding payment.

The Bank filed a complaint against Ms. Moore on July 16, 1991, alleging breach of the motor vehicle retail installment sales contract. On December 11, 1991, Ms. Moore filed an answer, affirmative defense and counterclaim. The counterclaim alleged that the Bank violated section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, par. 9—504(3)) (UCC), which states, in pertinent part:

> "[R]easonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor."

Ms. Moore claimed that she was thus entitled to damages pursuant to section 9—507(1) of the UCC, which provides in pertinent part:

> "If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the

disposition has occurred the debtor \*\*\* has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debt or the time price differential plus 10% of the cash price." Ill. Rev. Stat. 1989, ch. 26, par. 9—507(1).

On February 26, 1992, the Bank moved to voluntarily dismiss its complaint against Ms. Moore. The complaint was dismissed in an agreed order filed on March 11, 1992. The counterclaim, however, remained pending. The counterclaim was tried and denied on September 30, 1992. The trial court ruled that Ms. Moore was not able to recover damages under the UCC due to the operation of section 20 of the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1989, ch. 121$^1/2$, par. 580) (Act), as construed by this court in *Chicago City Bank & Trust Co. v. Anderson* (1975), 26 Ill. App. 3d 421, 423, 325 N.E.2d 701.

The trial court denied Ms. Moore's post-trial motion and both parties' fee petitions on February 16, 1993. Defendant now appeals.

Ms. Moore contends that the trial court erred in ruling that she could not recover damages under section 9—507(1) of the UCC due to the operation of section 20 of the Act. In *Anderson*, the plaintiff bank attempted to sue defendant Anderson for a $486 deficiency on a $3,774 note after repossessing the automobile and selling it for either $125 or $180 (the record was unclear on this point). (See *Anderson*, 26 Ill. App. 3d at 422-24, 325 N.E.2d at 702-04.) At that time, section 20 of the Act provided as follows:

"Upon default by the buyer under a retail installment contract the parties have the rights and remedies provided in Article 9 of the Uniform Commercial Code. If the buyer has paid an amount equal to 60% or more of the deferred payment price at the time of his default under the contract and if the buyer, at the request of the holder and without legal proceedings, surrenders the goods to the holder in ordinary condition and free from malicious damage, the holder must, within a period of 5 days from the date of receipt of the goods at his place of business, elect either (a) to retain the goods and release the buyer from further obligation under the contract, or (b) to return the goods to the buyer at the holder's expense and be limited to an action to recover the balance of the indebtedness." (Ill. Rev. Stat. 1971, ch. 121$^1/2$, par. 580.)

The *Anderson* court held that where the bank did not return the automobile within five days, it elected to retain the automobile and was barred from seeking a deficiency judgment based on the contract. See *Anderson*, 26 Ill. App. 3d at 427, 325 N.E.2d at 706.

The *Anderson* court also held that the buyer's counterclaim, which was based on the holder's failure to provide reasonable notification under section 9—504(3) of the UCC, failed to state a cause of action. (*Anderson*, 26 Ill. App. 3d at 427-28, 325 N.E.2d at 706.) The court reasoned:

> "Having successfully contended that this case falls within the purview of section 20, and that [the bank] was bound to retain the car and to forego an action on the indebtedness, [the buyer] cannot now complain that he was not properly notified of the subsequent sale of the car or that the subsequent sale was commercially unreasonable. What [the bank] subsequently does with the car [it] has opted to retain is of no concern to [the buyer]." (*Anderson*, 26 Ill. App. 3d at 428, 325 N.E.2d at 706.)

The trial court ruled in this case that it was bound to follow the *Anderson* rationale and deny Ms. Moore's counterclaim.

Section 20 of the Act, however, was later amended. It is presumed that the legislature knows how courts have interpreted a particular statute. (*In re May 1991 Will County Grand Jury* (1992), 152 Ill. 2d 381, 388, 604 N.E.2d 929, 933.) An amendment to a statute generally indicates a legislative purpose to change existing law. *In re Estate of Skoufes* (1985), 138 Ill. App. 3d 954, 956, 487 N.E.2d 49, 50.

■ In this case, Ms. Moore directs this court's attention to the opening portion of the statute. As noted above, the old section 20 provided:

> "Upon default by the buyer under a retail installment contract the parties have the rights and remedies provided in Article 9 of the Uniform Commercial Code. If the buyer has paid an amount equal to 60% or more of the deferred payment price ***." (Ill. Rev. Stat. 1971, ch. 121½, par. 580.)

The amended section 20 provides:

> "Unless otherwise limited by this Section, the parties shall have the rights and remedies provided in Article 9 of the Uniform Commercial Code with respect to default and disposition of collateral.
>
> If the buyer has paid an amount equal to 60% or more of the deferred payment price ***." (Ill. Rev. Stat. 1989, ch. 121½, par. 580.)

The amended section 20 also grants buyers a right of redemption under certain circumstances and requires holders to provide notice of that right within three days of repossession. Ill. Rev. Stat. 1989, ch. 121½, par. 580.

■ These amendments are in accord with the historical trend toward increasing consumer protection in Illinois as recounted in detail in *Chrysler Credit Corp. v. Ross* (1975), 28 Ill. App. 3d 165, 328 N.E.2d 65. While the consumer's right to a remedy under article 9 of the

UCC was judicially limited by the *Anderson* decision, the amended section 20 of the Act states that the consumer's article 9 rights can only be limited by section 20 itself. Section 20 of the Act contains no express limitation on the consumer's article 9 right to a remedy in the situation presented here. Consequently, we conclude that the amendment of section 20 evinces a legislative intent to permit the consumer to recover under article 9 of the UCC under the circumstances presented in the record on appeal.

Accordingly, the judgment of the circuit court of Cook County is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY and BRADEN, JJ., concur.