281 So.2d 534 (1973)
Irving TURK, Appellant,
v.
ST. PETERSBURG BANK AND TRUST COMPANY, a Florida Banking Corporation, Appellee.
No. 72-619.
District Court of Appeal of Florida, Second District.
July 25, 1973.
Rehearing Denied September 14, 1973.
Charles W. Pittman of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
*535 Charles Carrere of Harrison, Greene, Mann, Davenport, Rowe & Stanton, St. Petersburg, for appellee.
LILES, Acting Chief Judge.
Irving Turk, the appellant, was sued by appellee, St. Petersburg Bank and Trust Company, to recover for a deficiency from Turk. The case was tried before a jury and the jury returned a verdict of $7,490 in favor of the bank. Proper post-trial motions were filed and denied and this appeal ensued.
Irving Turk, president of Bob King, Inc., obtained floor plan financing for automobiles which Bob King, Inc. was selling. Turk, Bob King and Bob King, Inc., executed a note for $35,000 along with a security agreement, and the bank took certain automobiles belonging to Bob King, Inc. as security. The appellant Turk ceased to be active in the corporation during the existence of the agreement. However, prior to his separation from Bob King, Inc., Turk, along with Bob King, went back to the bank and sought to have the total obligation reduced to $20,000. They advised Mr. Applegate, the assistant vice president and loan officer, that they wished to reduce their liability to $20,000, the outstanding debt at that time being $8,000. Mr. Applegate agreed to this and had a new note in the amount of $20,000 prepared. The record reflects that Mr. Applegate advised Turk that the documentary stamps would be $30.00.
The appellant maintains, and from the record there is substantial evidence to support his allegation, that the first note was retained by the bank to show that documentary stamps had already been paid and that the $20,000 note was being substituted for the first note. Appellee urges that there was conflict as to this and he cites parts of the record in his brief to support this conflict. We, of course, have read the record, particularly that portion cited by appellee, and we simply do not find any conflict in the testimony. It is clear that Mr. Applegate agreed that the second note could be substituted for the first note and that by complying with F.S. § 201.09, F.S.A., further stamps would be unnecessary. While this specific statute was not discussed by either party at the conference, it was agreed by both Mr. Applegate and Mr. Turk that the purpose of retaining the $35,000 note was to avoid necessity of purchasing additional documentary stamps.
In any event, after the execution of the $20,000 note the bank continued to advance monies on the note until at one point in 1968 the indebtedness reached $36,336.00. The bank became concerned for its collateral and, after an investigation, sought to take action. They advised Bob King, Inc. that they were going to take possession of the automobiles and they did so. They then sold the automobiles for the sum of $17,881.52. The bank alleged that at the time of repossession the total outstanding indebtedness was $32,861.00 and sued Turk for $15,540.92 plus interest.
Appellant urges ten specific points why the jury verdict should be reversed. We will not attempt to answer all of the points individually; but we believe that the verdict should be reversed for at least two reasons. First, the court erred in allowing the $35,000 note to be introduced as evidence of liability. From the uncontroverted evidence, the $35,000 note was retained by the bank for the sole purpose of showing the purchase and affixing of documentary stamps so that the new $20,000 note should not again be stamped. That should have been the only reason for the admission of the $35,000 note.
Secondly, and more importantly, this transaction was governed by the Uniform Commercial Code, and particularly Section 679.504(3), which reads as follows:
"(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time *536 and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."
This code was adopted and became effective in Florida on January 1, 1967. We have been unable in our research to find a Florida case construing the language contained in the quoted section. However, many other states have adopted this code and the language is clear that before a secured party (in this instance the bank) can obtain a deficiency against a debtor (in this instance Turk) the debtor must be given notice of what is about to occur. This is as it should be because the debtor in this instance, Turk, could have done many things. He could have purchased the automobiles himself; he could have paid the extent of the liability, i.e., $20,000; he could have secured purchasers for the automobiles. He was not afforded the opportunity to do anything. If the bank in this instance wanted to dispose of the collateral without judicial process or notice to the debtor as the statute provides, it may do so; but it is not then entitled to a deficiency against any debtor not so notified. The record reflects that notice was given to Bob King, Inc., but the statute prevents the bank from securing a deficiency against Irving Turk.
There are exceptions to the rule as will be noted in the statute. However, automobile auctions should not be construed as a "recognized market" under F.S. § 679.504(3), F.S.A. See, One Twenty Credit Union v. Darcy, 5 U.C.C.R.S. 792 (Mass. App. 1968). Although such auctions do not present some of the evils intended to be prevented by the statute, it seems reasonable to limit the definition of "recognized market" to widely recognized stock and commodity exchanges which are regulated in some substantial way. This will prevent nearly all of the evils while imposing only a slight notice burden on creditors in order to obtain their deficiency judgments.
In the absence of a required notice by the secured creditor pursuant to F.S. § 679.504(3), F.S.A., the creditor forfeits his right to any deficiency against any debtor not so notified. We hereby adopt the reasoning of the New York Court in Leasco Data Processing Equipment Corporation v. Atlas Shirt Company, Inc., 66 Misc.2d 1089, 323 N.Y.S.2d 13 (N.Y.Civ. 1971) to the effect that since deficiency judgments after repossession of collateral are in derogation of the common law, any right to a deficiency accrues only after strict compliance with the relevant statutes.
This case would present two rather startling propositions should we affirm. One is that a man in the position of appellant here would never be able to limit his liability of indebtedness to a bank for the reason that the bank could ignore, as was done here, any contractual limitations, nor would he be able to rely on the clear intent of F.S. § 201.09, F.S.A. He would not be able to rely on the clear understanding of the officers of the bank that his indebtedness had, in fact, been limited, and the bank would be at liberty to advance whatever sums over and above the *537 agreed upon limitation and thereby set the indebtedness. This, of course, is not reasonable. The bank is at liberty to seek repayment from Bob King, Inc. The corporation was presumably the benefactor of the extension of financing over and above the $20,000; and the bank may choose to go against it, but they may not, because of the testimony adduced, as well as failure to comply with the U.C.C., now go against Turk for what is obviously the collectible judgment.
For these reasons the judgment is reversed with directions to enter a verdict in favor of appellant.
McNULTY, J., and CALHOUN, JAMES P., Associate Judge, concur.