RICHARD SPILLERS, Petitioner-Appellant, v. FIRST NATIONAL BANK OF ARENZVILLE, Respondent-Appellee.

Fourth District   No. 15610

━━━━

Opinion filed February 11, 1980.—Rehearing denied March 18, 1980.

TRAPP, J., dissenting in part.

Ronald J. Kanoski, of Rushville, for appellant.

Presney, Huffman & Kelly, of Virginia (Robert A. Huffman, of counsel), for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Petitioner appeals a decision of the circuit court of Schuyler County sitting without a jury finding in favor of the respondent. The basic issues revolve about certain provisions of the Uniform Commercial Code, particularly with reference to the disposition of collateral (Ill. Rev. Stat. 1977, ch. 26, pars. 9—501, 9—504, and 9—507).

The background, as revealed in the record, indicates that petitioner on March 14, 1977, borrowed $25,000 from respondent and gave a judgment note therefor. The purpose of the loan was to purchase a crane which was pledged as collateral and petitioner added to the crane a set of concrete forms which were about 2 years old at the time.

The note was for six months' duration, and at the end of that time respondent demanded payment. None was made and the duration, by agreement, was extended for 30 days. At the end of that extension, no payment having been made, respondent placed the note in judgment on December 13, 1977. This judgment was confirmed on January 27, 1978, and thereafter respondent brought citation proceedings to enforce it.

Apparently as a result of the citation proceedings, petitioner turned the crane and the forms over to respondent who proceeded to sell them. One of the principal issues in this appeal is the nature and timeliness of the notice given to petitioner of the sales of the collateral.

On March 7, 1978, petitioner's attorney received a letter from respondent's attorney stating that respondent had received a bid of $15,000 for the crane and it would be sold "ten days from the receipt of this notice * * * as per our agreement of February 2, 1978." Petitioner replied to this by submitting an offer of $16,000 for the crane through a corporation owned and operated by him. Respondent replied to this offer by asserting three conditions: (1) that a cashier's check for $16,000 be tendered within four days; (2) that petitioner's concrete forms be tendered to respondent at the time the crane was picked up; and (3) that petitioner sign a waiver

of any and all rights in the crane, including the right to object to the sale and to exercise any right of redemption. Petitioner felt unable to meet these conditions and all negotiations and communications between the parties then ceased.

Respondent on April 22, 1978, sold the crane to the $15,000 bidder without making any further efforts to secure other bids. Five days later this bidder sold the crane to an equipment dealer in Aledo, Illinois, named Henderson. The price of this sale does not appear in the record. On November 3, 1978, Henderson sold the crane for $27,500 to a contractor in Iowa, named Hall. At trial on May 4, 1979, Hall testified that the crane was worth all he had paid for it and that he had it for sale at a price of $35,000.

Respondent next proceeded to sell the concrete forms. One bid was received from a contractor who had his own forms mixed in with petitioner's forms on a job site. Another bid, $500 higher, was received from another contractor but was afterwards withdrawn because that bidder was unable to determine which of the intermingled forms he was bidding on. Respondent then sold the forms for $6,120 to the other bidder. It is uncontroverted that petitioner knew of the impending sale of the forms generally, but had no specific knowledge until later.

After both sales had been consummated, the crane and the forms, a deficiency of approximately $6,500 existed on the judgment. Respondent collected this through various post-judgment proceedings. In the same cause, petitioner on October 13, 1978, filed a petition for damages against respondent in which he alleged that the sales of the crane and the forms were not commercially reasonable within the meaning of the Commercial Code. After a bench trial, the circuit court found that the sales were commercially reasonable and dismissed the petition for damages. This appeal followed. We reverse.

A preliminary question to be answered is whether this transaction is governed by the Commercial Code. Section 9—501(5) of the Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—501(5)) provides as follows:

"When a secured party has reduced his claim to judgment the lien of any levy which may be made upon his collateral by virtue of any execution based upon the judgment shall relate back to the date of the perfection of the security interest in such collateral. A judicial sale, pursuant to such execution, is a foreclosure of the security interest by judicial procedure within the meaning of this Section, and the secured party may purchase at the sale and thereafter hold the collateral free of any other requirements of this Article."

The Uniform Commercial Code Comment to this section reads in part as follows:

"The second sentence of the subsection [i.e., (5)] makes clear that a judicial sale following judgment, execution and levy is one of the

methods of foreclosure contemplated by subsection (1); such a sale is governed by other law and not by this Article ° ° °." (Ill. Ann. Stat., ch. 26, par. 9—501, Uniform Commercial Code Comment, at 322 (Smith-Hurd 1974).)

The Illinois Code Comment on section 9—501 in referring to subsection (5) has this to say:

"The last sentence of Official Comment 6 makes explicit what is implicit in this Section—that a judicial sale following judgment, execution and levy is governed by other law, not by this Article. However, if a secured party repossesses collateral and also reduces his claim to judgment (whether concurrently or not) and if repossession involves taking possession of collateral in any way other than pursuant to an execution issued following a judgment, his repossession and disposition of the collateral will probably be subject to the requirements of this Part." Ill. Ann. Stat., ch. 26, par. 9—501, 320-21 (Smith-Hurd 1974).

We find that the Illinois Comment quoted above accurately states the law and a plain reading of the statute leads inevitably to such a result. Judgment, execution and levy are ancient procedures in the law and are governed by their own statute which dates from the earliest days of this State. "An Act concerning judgments and executions" was approved February 17, 1823. It was later repealed by "An Act concerning judgments and executions" approved January 17, 1825, which remained substantially unchanged until the general codification of the Illinois statutory law in 1872. The Act of 1872 (Ill. Rev. Stat. 1977, ch. 77, pars. 1 through 68), has survived virtually unchanged for over 100 years, and is most explicit in its terms. The veriest tyro at the bar can recognize an execution sale.

On the other hand, if the procedure employed does not follow the dictates of chapter 77, it necessarily falls within the ambit of section 9—501 et seq. of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, pars. 9—501 et seq.). The secured judgment creditor has his choice: chapter 77 or chapter 26. The existence of the judgment is only the first step along either road. If the creditor elects chapter 77, he must then proceed to obtain a writ of execution, a levy and a sale. If he elects chapter 26, the latter are not involved and the existence of the judgment is immaterial. He may proceed with chapter 26 with or without a judgment.

In the instant case, respondent had already reduced his claim to judgment, but there is nothing in the record remotely resembling an execution sale under chapter 77. The petitioner turned the collateral over to the respondent who proceeded to make the sales on its own. No execution writ was ever delivered to a sheriff or other officer; no such officer ever advertised a sale; no such officer ever reported a sale. The instant case is clearly a disposition of collateral after default under section

9—503 of the Uniform Commercial Code, Secured Transactions (Ill. Rev. Stat. 1977, ch. 26, par. 9—503), notwithstanding the claim had already been reduced to judgment.

■■ We turn next to the question of notice of the sales. The trial court found that both sales were commercially reasonable. While its findings are entitled to great weight, it is still our duty to reverse when such a finding is contrary to the manifest weight of the evidence. *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.

■■ The Code at section 9—504(3) imposes two requirements on the sale: (1) it must be "commercially reasonable" and (2) the debtor must receive "reasonable notification" of either a public or private sale or other disposition. (Ill. Rev. Stat. 1977, ch. 26, par. 9—504(3).) The trial court apparently treated these as a unitary matter since its order refers only to "commercially reasonable" and to a large extent the two requirements are interrelated. The Code itself does not define "reasonable notification." Therefore, it should be accorded its plain and unambiguous meaning. The courts of Illinois have held that such notice is mandatory (*Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 868); cannot be waived except under circumstances not involved in the case at bar (*Stensel v. Stensel* (1978), 63 Ill. App. 3d 639, 380 N.E.2d 526); and is intended to afford the debtor an opportunity to observe that the sale is conducted in a commercially reasonable manner (*General Foods Corp. v. Hall* (1976), 39 Ill. App. 3d 147, 349 N.E.2d 573).

■■■ As to the crane, there is no doubt that petitioner initially received notice of sale. This was the predicate for the bid made by his corporation which was rejected by respondent. Thereafter, no other notice was given. Respondent refers us to an "agreement" of February 2, 1978, regarding notice. However, so far as the record discloses, such a purported agreement is so ambiguous that we are unable to say that it did, or did not, exist. From March 22, 1978, the date of petitioner's corporation's bid, until April 27, 1978, when the crane was sold, the petitioner had no way of knowing the status of the matter. Undoubtedly he knew that a sale impended but under section 9—504(3), the burden was on respondent to keep petitioner appraised of developments. The word "any" as used in section 9—504(3), when referring to private sales, has the clear meaning of "all and every." In its basic sense "any" refers to an indefinite number, as "any person may attend court." Webster's New World Thesaurus (1974) gives as synonyms for the word, "either, whatever, any sort, any kind, any one, in general, each some, several, each and every, all, one and all." The same source lists as antonyms for the word, "only, one, single."

It therefore became the duty of respondent to notify petitioner of all and every proposed private sale, or sales. Simply being aware of an

impending sale is insufficient. *Morris Plan Co. v. Johnson* (1971), 133 Ill. App. 2d 717, 271 N.E.2d 404.

An analogous case is *DeLay First National Bank v. Jacobson Appliance Co.* (1976), 196 Neb. 398, 243 N.W.2d 745. In that case there were several successive private sales of collateral under the provisions of the Code. The Supreme Court of Nebraska held that the failure of notice as to each sale was a violation of the notice provisions of section 9—504(3). We follow the *Morris Plan* and *DeLay* courts and hold that petitioner did not receive reasonable notification of the sale within the meaning of the Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—504(3)).

Having held that there was a failure of notice as to each item of collateral, we turn next to two consequences which flow from this finding, neither of which is free from difficulty: (1) the deficiency and (2) damages.

■■ In *Stensel*, this court held, following *Morris Plan*, that a failure of notice bars any deficiency judgment. However, in both of those cases the court had before it a deficiency judgment entered after the sale of the collateral without any prior judgment in existence. Here, no deficiency arose until after the sale, but it was measured by the prior judgment which was entered December 13, 1977, and confirmed January 29, 1978. Under ordinary circumstances, a deficiency judgment growing out of a judgment by confession can be attacked only by bringing a proceeding under Supreme Court Rule 276 (Ill. Rev. Stat. 1977, ch. 110A, par. 276). No such direct attack appears in this record.

The usual method employed under Rule 276 is to file affidavits and a verified proposed answer. A failure to file affidavits and a verified proposed answer may be fatal to the judgment debtor's cause. (Compare *Melrose Finance Co. v. Inn Town Hotel, Inc.* (1978), 57 Ill. App. 3d 496, 373 N.E.2d 523.) However, it was noted in that case that the purpose of the proceeding is to establish a *prima facie* defense. In *Turner v. Smiley* (1972), 9 Ill. App. 3d 388, 391, 291 N.E.2d 27, it was held that strict procedural requirements of the rule need not be met, the court saying in part, "The Rule requires that the defendant must make a clear showing that he has a defense. A defense on the merits in this type of case has long been held to be one which depends on the inherent justice of the defendant's contention as shown by substantial facts."

■■ We hold that the document filed by petitioner and entitled "Petition for Damages" discloses that petitioner has a defense and may be construed as sufficient to open up the underlying judgment. It alleges a grossly disproportionate price obtained for the collateral within a relatively short time after the debt was incurred. It was filed in the same proceeding and although not verified, we do not consider this to be a fatal

flaw. Complaints for damages are customarily not verified, but in the special circumstances here present, mere meticulous attention to detail would have produced such a *jurat*.

■ We therefore hold under the authority of *Stensel* that any deficiency is barred. Accord, *General Foods Corp.*; *Tauber v. Johnson* (1972), 8 Ill. App. 3d 789, 291 N.E.2d 180.

The final question to be addressed is that of damages. The statutory basis is found in section 9—507(1) of the Uniform Commercial Code—Secured Transactions (Ill. Rev. Stat. 1977, ch. 26, par. 9—507(1)) which provides in substance that upon a secured party's violation of the notice provisions of article 9, the debtor may recover "any loss caused by a failure to comply" with article 9.

Our researches have not revealed any prior authority on the precise set of facts present here. Most of them assume the "loss" to be the equivalent of a deficiency judgment, and they then diverge on the question as to whether the failure of notice bars such deficiency. While there is insufficient evidence in this record to make any final assessment, it is at least suggested that the total value of the collateral, the crane and the forms, was in excess of the debt. The question then becomes: having extinguished the deficiency, as we have already ordered, is there still remaining "any loss" to the petitioner.

As previously indicated, we do not have adequate evidence before us to make this determination. The record does not reflect the selling price of the crane which was made five days after the initial sale for $15,000, nor is there any adequate evidence of the value of the forms other than the petitioner's statement as to what he had paid for them some two years previously.

■ In our opinion the debtor's right to damages is cumulative to the barring of a deficiency, provided he can establish that a proper valuation of the collateral is in excess of the total debt. This was indicated obliquely in *Chicago City Bank & Trust Co. v. Anderson* (1975), 26 Ill. App. 3d 421, 425, 325 N.E.2d 701, wherein the court said:

> "The provision of section 20 [referring to the Motor Vehicle Retail Installment Sales Act] requiring, under certain circumstances, an election between two alternative remedies is in conflict with the *cumulative remedies* provided in article 9 * * *." (Emphasis added.)

Unless this were the rule, the Code would be heavily weighted in favor of a creditor who potentially could dispose of collateral whose value greatly exceeded the amount of the debt or deficiency. There are many analogues in the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1977, ch. 121½, pars. 561 through 586), which was under consideration by the *Anderson* court.

The judgment of the circuit court of Schuyler County is therefore reversed, and the cause is remanded to that court with directions to vacate the deficiency order and having done so, then consider the matter of damages.

Reversed and remanded with directions.

GREEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting in part:
I dissent from that portion of the majority opinion which determines that as to the crane, petitioner "did not receive reasonable notification of the sale within the meaning of the Code."

The purpose of reasonable notice to the debtor is to permit him to redeem prior to the creditor's disposition of the collateral. *Hemken v. First National Bank* (1979), 76 Ill. App. 3d 23, 394 N.E.2d 868.

The testimony is that upon his failure to pay any part of the principal when the note became due, Spillers was given 30 days to refinance by an extension of the note for that term. Thereafter, the note was placed in judgment.

The Spillers pleadings admit to conversations between counsel of the respective parties providing 10 days' notice of the best offer for the crane received through a recognized dealer in this sort of equipment. By letter dated March 1, 1978, the attorney for the bank advised Spillers' counsel of the offer in the sum of $15,000 for the crane with the statement "Ten days from receipt of this notice, the First National Bank of Arenzville shall be free to sell such crane as per our agreement of February 2, 1978."

On March 15, 1978, Spillers' counsel wrote to the bank stating "On behalf of my client, Richmont Corporation * * *" that he would offer $16,000 for the crane. If that attorney was not, in fact, acting in behalf of Spillers, one would conclude that there was an apparent conflict of interest on the part of that counsel. We find from the Spillerses' testimony that he and his wife were the only directors of Richmont Corporation.

On March 22, 1978, the bank, acting through its counsel, accepted the Richmont offer subject to payment in cash and provisions for collection of the balance of the bank's judgment. The record does not show a written response to the written acceptance of the bank, either in behalf of Richmont or Spillers. Spillers' testimony is that the matter of the bid was "dropped" and there is no testimony of any reply made to the bank's acceptance, although the document concluded with the statement "Please advise as to when payment can be expected, when your client desires to take possession of the crane and * * *."

The sale by the bank upon the initial bid was about 30 days later—a not unreasonable delay in the light of Spillers' failure to respond to the last communication. I cannot agree with the conclusion of the majority that "that petitioner had no way of knowing the status of the matter." His want of response to the bank's acceptance is an apparent source of delay and confusion.

Section 9—504(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—504(3)) requires "reasonable notification of the time *after which* any private sale or other intended disposition is to be made * * *." Neither the statute, the conversations between respective counsel of the parties, nor the notice of the bank of a proposed sale fixed a date by which the sale would have to be completed. The majority opinion treats this event as a series of successive sales, notice of the last of which was lacking. The record does not support such determination, but rather shows the completion of a sale of which notice was given after Spillers had stalled the proceedings for sale by failing to respond to the acceptance. The record also shows that Spillers had more than adequate time to exercise any right of claim to redemption of the crane. Upon this issue I would affirm the trial court.