### In the Matter of FOREST ENTERPRISES, INC., Debtor.

#### Bankruptcy No. 83–2669.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 22, 1986.

C. Kathryn Preston, Larry Foyle, Tampa, Fla., for debtor.

Robin S. Trupp, Tampa, Fla., for claimant.

## ORDER ON OBJECTION TO CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration in this Chapter 11 case is Forest Enterprises, Inc.'s (Debtor) Objection to Claim filed by Rozier Machinery Company (Rozier). The claim of Rozier is an alleged deficiency claim which resulted from the sale of the Rozier's collateral. It is the Debtor's contention that the sale of the collateral was not held in a commercially reasonable manner and, specifically, that Rozier failed to give notice of the sale, therefore, Rozier is not entitled to have its claim allowed. The facts relevant and germane to a resolution of this controversy, as established at the final evidentiary hearing, are as follows:

The Debtor negotiated with Rozier for the purchase of a new Caterpillar 227 Fellerbuncher (Caterpillar), Serial No. 10W187, at a price of $383,400.00. The Debtor used the equipment for approximately four weeks in April, 1983 (the Caterpillar was used an estimated 200–300 hours during these four weeks), and on May 2, 1983 the parties entered into a Lease Agreement with an option to purchase the equipment (Debtor's Exh. # 1). The parties agreed and stipulated that the Lease Agreement is actually an installment sale contract with a security interest retained by Rozier. Under the Lease Agreement, the Debtor was required to make monthly payments in the amount of $6,390.00. The Debtor made two payments, one in May and June, but in July, 1983 defaulted on the contract. The Debtor parked the Caterpillar and did not use it thereafter except for three days in August, 1983. Over this time period, the Debtor's total use of the equipment was approximately 1,000 hours. On September 8, 1983, the Caterpillar was delivered by the Debtor to Rozier in order to make repairs pursuant to the warranty of the Caterpillar Company. By consent of the parties, the possession was later converted to a voluntary surrender of the Caterpillar on September 14, 1983.

After Rozier took possession of the equipment, the parties met on two occasions in order to determine what should be done with respect to the Debtor's default and the Caterpillar. The first meeting was held on September 14, 1983, at the offices of Rozier in Tampa, Florida. Present at the meeting were Bill Murrel (President of the Debtor), Robert Murrel (Vice President of the Debtor), Fred Murrel, Ken McGuire (Sales Manager of Rozier), and Dave Leneberg (Finance Credit Manager of Rozier). Rozier agreed to stop the accrual of rent and interest on the indebtedness. The parties also agreed to meet a second time on September 26, 1983.

The second meeting was held again at the offices of Rozier and was attended by the same individuals who were in attendance at the first meeting and Rozier's attorney, Mr. Nixon. It appears that Rozier offered at the meeting to take the Cater-

pillar back into its inventory and give credit to the Debtor of $210,000.00 on the Caterpillar toward the balance which was due on the contract. That offer, however, was unacceptable and rejected by the Debtor.

The only source of material factual dispute between the parties is what was the ultimate understanding and their agreement. According to the Debtor, the parties agreed that the Debtor would continue to attempt to sell the Caterpillar and pursue negotiations already in progress. The Debtor further asserts that Rozier agreed to forward any potential sales to the Debtor for negotiation and sale. In contrast, Rozier asserts that the Debtor requested that Rozier actively attempt to sell the Caterpillar and Rozier agreed that they would actively attempt to sell the Caterpillar for a price not less than Ken McGuire's established market value for the equipment which was $210,000.00. It should be noted that several discussions occurred between Fred Murrel and Dave Leneberg with respect to the amount which should be received on the Caterpillar. It is unclear as to whether any terms or specific numbers were agreed upon during these discussions.

On or about October 24, 1983, Rozier sold the Caterpillar for $227,000.00. The Debtor filed a Chapter 11 on December 23, 1983. Rozier calculates its alleged deficiency as follows:

| | |
|---|---:|
| Original Lease Agreement payments of $6,390.00 × 60 payments = | $383,400.00 |
| Interest refund (credit) | −94,105.00 |
| Two payments received (credit) | −12,780.00 |
| Sale proceeds (credit) | −227,000.00 |
| Sales commission due Rozier employee | +2,250.00 |
| TOTAL | $51,765.00 |

Rozier's position is that it is entitled to this deficiency claim against the Debtor. It is the Debtor's position that the sale was *not* held in a commercially reasonable manner. Specifically, no notice was given to the Debtor and the Caterpillar was not sold for a fair price.

Section 679.504(3) of the Florida Statutes which deals with a secured party's right to dispose of collateral after default and the method of such disposition states in pertinent part:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition ... *must be commerically reasonable .... reasonable notification of the time and place or any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....*

[Emphasis added].

In the event of a private sale, the facts of this case indicate a private sale did in fact occur, it is required that the secured party send reasonable notification of the time *after which* any private sale is to be made. The central issue is whether Rozier, the secured party, sent or provided reasonable notification to the Debtor after which the sale of the Caterpillar was to occur. The term "reasonable notice" is not defined in Article 9, but Comment 5 to the Uniform Commercial Code § 9–504 states: "at a minimum it must be sent in such time that persons entitled to receive it will have sufficient time to take appropriate steps to protect their interests by taking part in the sale or other disposition if they so desire." UCC § 9–504, Comment 5 (1985). Furthermore, this right cannot be waived except by execution of a conspicuous statement removing or modifying the right. *See* Fla. Stat. § 679.501(3)(b) (1986).

Section 679.504(3) requires that the secured party, Rozier, "send" written notification prior to the sale of the collateral, herein the Caterpillar. The word "send" is defined in Fla.Stat. § 671.201(38) as follows:

> "Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under

the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending.

A careful review of the word "send" in the Florida Statutes makes it apparent that it refers to written notice, and therefore, § 679.504(3) would arguably require that written notice be sent to the Debtor before a private sale by the secured creditor.

It is clear from the evidence that no notice was sent by Rozier to the Debtor indicating that a private sale would be held by Rozier. At no time was any notice given to the Debtor that Rozier intended to sell the equipment if it was able to locate a buyer. Even assuming that the remarks made by Rozier personnel at the second meeting held on September 26, 1983 could be construed as giving some sort of notice, clearly the notice cannot be considered "reasonable" as required by Florida Statute § 679.504(3).

█ A deficiency judgment is in derogation of the common law and the right accrues only after strict compliance with statutory provisions. *See Dependable Ins. Co. v. Landers*, 421 So.2d 175 (Fla. 5th DCA 1982); *Turk v. St. Petersburg Bank & Trust Co.*, 281 So.2d 534 (Fla. 2d DCA 1973). It is very clear under Florida law that if the secured creditor fails to give notice of a sale, he is not entitled to a deficiency judgment. *See Hayes v. Ring Power Corp.*, 431 So.2d 226 (Fla. 1st DCA 1983); *Thomas v. Sutherland*, 370 So.2d 12 (Fla. 1st DCA 1978); *Barnett v. Barnett Bank of Jacksonville, N.A.*, 345 So.2d 804 (Fla. 1st DCA 1977); *Turk v. St. Petersburg Bank & Trust Co.*, 281 So.2d 534 (Fla. 2d DCA 1973).

█ While this Court is not ready to accept the requirement of written notice in *all* circumstances, *see H.P. Bondurant v. Beard Equipment Co.*, 345 So.2d 806 (Fla. 1st DCA 1977), in this case the informal discussions in the second meeting on September 26, 1983, falls far short of the degree of precision required in a commercial transaction. Therefore, Rozier is not entitled to any deficiency judgment against the Debtor since Rozier failed to provide reasonable notice to the Debtor before the private sale of the Caterpillar. In that this issue is dispositive of the deficiency claim, the commercially reasonable sale argument need not be addressed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the objection to the deficiency claim of Rozier by the Debtor be, and the same is, hereby sustained and the claim is disallowed.