**In re EXCELLO PRESS, INC., Debtor.**

**Bankruptcy No. 85 B 13649.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

March 11, 1988.

---

Towbin & Zazove, Ltd., Chicago, Ill., for debtor.

Ronald Peterson, Jenner & Block, Chicago, Ill., for Creditors Committee.

Alexander Terras, Epton, Mullin & Druth, Ltd., Chicago, Ill., for creditor Metlife Capital Credit Corp.

## MEMORANDUM AND ORDER

THOMAS JAMES, Bankruptcy Judge.

Metlife Capital Credit Corporation, a creditor, asks the court to reconsider its order of November 18, 1987, sustaining the objections of the debtor, Excello Press, Inc., and the creditors committee to the Metlife claim and disallowing it and for rehearings or for new trials on the disallowance of its claim, and denials of its motions to stay and to vacate a portion of an agreed order. The court will deny Metlife's motions to reconsider and for rehearing or for new trial.

In 1980, Excello entered into certain equipment leases with Litton Industries Credit Corporation (predecessor to Metlife) dated September 19, 1980 and October 3, 1980 for two Harris printing presses.

Excello filed its voluntary chapter 11 reorganization petition on October 11, 1985. On April 4, 1986, pursuant to Metlife's motion to lift the stay, the court entered an agreed order cancelling these equipment leases and modifying the automatic stay to permit Metlife to remove or otherwise dispose of these presses without liability or claim to either Excello or Metlife, except only such judgment allowed as Metlife might obtain in the Excello chapter 11 case for the deficiency between the amount of Metlife's claim and the fair market value of the presses which deficiency judgment would not exceed $900,000.

Metlife disposed of the presses at a private sale and filed a proof of claim for $900,000. Excello and the creditors committee objected to this claim on the ground that Metlife was not entitled to a deficiency because it failed to comply with the notice and commercial reasonableness requirements of § 9–504(3) of the New York Uniform Commercial Code.

On November 9, 10 and 18, 1987, the court held hearings on Metlife's motion to vacate part of the April 4 agreed order and

for leave to file amended proof of claim, its motion to stay debtor's proposed distribution and the objections to Metlife's claim. Metlife proceeded first and submitted evidence in support of its claim and these motions. After Metlife had completed the presentation of its evidence, Excello and the creditors requested the court to sustain their objections and disallow Metlife's claim and deny its motions. The court on November 18, 1988, for the reasons stated in open court did sustain the objections and disallow the claim, and deny the motions.

Metlife has filed its motions for reconsideration of the court's November 18 orders under Bankruptcy Rule 3008 and for rehearing or for a new trial under Bankruptcy Rule 9023. Reconsideration of the disallowance of Metlife's claim is governed solely by Bankruptcy Rule 3008 and by § 502(j) of the Bankruptcy Code, 11 U.S.C. § 502(j). Section 502(j) provides that the bankruptcy court may reconsider the disallowance of a claim *for cause.* [Fed.R.Civ.P. 59 does not apply to reconsideration of claims for Bankruptcy Rule 9023 excepts Fed.R.Civ.P. 59 from hearings under Bankruptcy Rule 3008.]

■ As to Bankruptcy Rule 3008, the Fifth Circuit Court of Appeals in *Matter of Colley,* 814 F.2d 1008, (5th Cir.1987), rehearing denied 818 F.2d 443 (5th Cir.1987), observed at page 1009:

> As the advisory committee note to Bankruptcy Rule 3008 evidences, the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved....
>
> The court's broad discretion should not, however, encourage parties to avoid the usual rules for finality of contested matters. Bankruptcy Rule 9024 incorporates Federal Rule of Civil Procedure 60 into all matters governed by the Bankruptcy Rules except, inter alia, "the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b) ..."
>
> We interpret Rule 9024 to provide that

when a proof of claim has in fact been litigated between parties to a bankruptcy proceeding the litigants *must seek reconsideration of the bankruptcy court's determination pursuant to the usual Rule 60 standards if they elect not to pursue a timely appeal of the original order allowing or disallowing the claim.* The elaboration of Section 502(j)'s requirement of "cause" for reconsideration by the Rule 60 criteria substantially eliminates the "tension with the right of an appeal from an erroneous final order." 3 Collier on Bankruptcy (15th ed.) P. 502.10 at 502–17. *See also In re W.F. Hurley, Inc., supra.* (Emphasis added.)

Thus, a creditor must assert fraud, newly discovered evidence, mistake, excusable neglect, or any of the other matters pertinent to a Fed.R.Civ.P. 60(b) motion to assert "cause" for reconsideration under Code § 502(j). [The Advisory Committee note to Bankruptcy Rule 3008 states that reconsideration of a claim is discretionary with the court. Reconsideration is not discretionary for Code § 502(j) provides that reconsideration may be only for cause.]

Here, Metlife seeks reconsideration on two grounds: (1) surprise or excusable neglect under Fed.R.Civ.P. 60(b)(1) because its failure to present evidence of the fair market value of the presses was due to its unawareness that it must offer such evidence, and (2) the court's errors on issues of law.

Metlife may not now claim that it was unaware of its obligation to prove the fair market value of the collateral. Metlife in its pre-trial brief addressed the need to prove fair market value. The creditors committee in its brief noted that Metlife had cited cases in its brief that stood for the proposition that it would be entitled to a deficiency if it could prove that the fair market value of the presses at the time they were sold was less than the debt owed. This position this court ultimately adopted. Metlife has failed to show grounds for reconsideration of this court's order based on surprise or excusable neglect.

■ Metlife's second ground is as stated based on errors of law. However, Fed.R. Civ.P. 60(b) does not afford relief from alleged errors of law. *McKnight v. United States Steel Corporation*, 726 F.2d 333, 337 (7th Cir.1984); and *Hahn v. Becker*, 551 F.2d 741, 745 (7th Cir.1977). Such relief would be appropriate under Fed.R.Civ. P. 59, but as already noted Bankruptcy Rule 9023 provides that Fed.R.Civ.P. 59 does not apply to reconsideration of allowances of claims.

■ Even if Metlife were entitled to relief under Fed.R.Civ.P. 59 to correct errors of law, it would not prevail. Metlife argues that this court erred in ruling that the financing agreements covering the presses were security agreements, not leases. If the financing agreements were found to be leases, the notice provision of § 9–504(3) of the New York Uniform Commercial Code would not apply.

The financing agreements here are titled "equipment leases." A determination of whether these documents are leases or security agreements must be based on the substantive provisions. "Although an agreement is denominated a lease, if the substantive provisions indicate it is in fact a sale, it would be deemed a sale. The parties cannot change the legal effect of an instrument simply by giving a name to it." *In re Loop Hosp. Partnership*, 35 B.R. 929, 932 (Bankr.N.D.Ill.1983).

This court applied the principles set forth in *Matter of Marhoefer Packing Co., Inc.*, 674 F.2d 1139, 1144–45 (7th Cir.1982), to conclude that the financing agreements in this case were security agreements. As stated in the creditors committee's brief on page 16, the court's conclusion is supported by the following factors: Excello maintained, repaired and insured the presses; Excello paid the taxes on the presses; Excello bore the risk of loss; Excello made a substantial deposit on the presses; Excello selected the presses from the manufacturer, Harris Press; the agreements did not include any of the warranties normally included in a lease; the presses were so large as to be impractical to move; Excello had an option to purchase the presses for a nominal price, 15% of the original price; and Metlife agreed to treat Excello as having purchased the presses for purposes of the investment tax credit. These facts support the conclusion of law that the financing agreements were security agreements.

Metlife also urges that if these were security agreements the court erred in not concluding that Metlife had satisfied the notice requirement under U.C.C. § 9–504(3) by giving Excello adequate notice of its private sale. Section 9–504(3) provides that "notification of the time after which any private sale ... is to be made shall be sent by the secured party to the debtor." This court ruled that this provision mandated that notice be in writing.

Metlife does not argue that it gave proper written notice. (Metlife sent a letter of notification concerning this private sale to Excello on the day it sold the M1000A press). Rather, it contends it provided Excello with adequate oral notice. New York lower courts have held that actual or constructive notice may be sufficient under U.C.C. 9–504(3). *Chase Manhattan Bank, N.A. v. Natarelli*, 401 N.Y.S.2d 404 (N.Y. Sup.Ct.1977). Thus, the New York courts have found that oral notice which gave the debtor actual notice of the sale is adequate notice. *First Bank and Trust Company of Ithaca v. Mitchell*, 473 N.Y.S.2d 697 (N.Y.Sup.Ct.1984).

But this court is of the opinion that the Eighth Circuit Court of Appeals in *Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417 (8th Cir.1983), in interpreting identical language in the Missouri code, properly concluded that U.C.C. § 9–504(3) mandates written notice. The Eighth Circuit quoted the following language from J. White & R. Summers, *Uniform Commercial Code* 1112 (2d ed. 1980), with approval:

Although several cases ... have suggested that oral notice is sufficient, these findings are almost certainly contrary to draftsmen's intent. Section 9–504 requires that the secured party "send" notice and 1–201(38) tells us that: ' "Send" in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual

means of communication with postage provided for and properly addressed....' It is most difficult to fit an oral message into the quoted language. Rather the subsection seems to contemplate mail or telegraphic notice.

*Executive Financial Services, Inc., supra,* 722 F.2d at 419. This court suggests that it did not err in concluding that Metlife failed to give Excello adequate notice of its private sale of the presses.

■ Because the court has found that Metlife failed to give adequate notice, Metlife's argument that its disposition of the presses was commercially reasonable becomes moot. The remaining issue is the impact of this insufficient notice on Metlife's deficiency claim. New York case law has developed two approaches for dealing with this issue. One holds that a failure to notify is fatal to a secured creditor's right to a deficiency judgment. *Fitzpatrick v. Bank of New York,* 480 N.Y.S.2d 864, 868 (N.Y.Civ.Ct.1984). The other, and better approach, that such a failure does not bar recovery but rather creates a presumption that the security was equal to the debt. The secured party has the burden of overcoming that presumption and proving that the fair market value of the collateral was less than the debt owed. *Security Trust Co. of Rochester v. Thomas,* 399 N.Y.S.2d 511, 513 (N.Y.App.Div.1977). The secured party must prove the fair market value as of the time of sale.

■ In applying the second approach to this case, this court concluded that Metlife had failed to present evidence of the fair market value of the presses at the time of sale. Metlife has offered a laundry list of factors that it claims constitutes evidence of what the fair market value of the presses were: the original sale price of the presses, which was $3 million; the testimony of appraiser Phillip Pollack as to the value of the presses in 1985; the sales price of the presses at the private sale; the sales price of Excello's five-color presses; and an out of court statement of a third party that the presses were worth $600,000 each.

These facts do not establish the fair market value of the presses at the time of the sale. The original sales price showed nothing of the true value after six years of operation. The testimony of the appraiser was based on an appraisal that he made a year prior to the private sale. The amount that Metlife received at the sale does not establish the presses' fair market value. Indeed, the amount received at a sale that has not been conducted in compliance with U.C.C. § 9–504(3) is not evidence of fair market value of the collateral. *Community Manage. Ass'n. of Colorado Sp. v. Tousley,* 505 P.2d 1314, 1317 (Colo.App. 1973). The evidence of the value of "similar" presses owned by Excello was immaterial. The Excello five-color presses were different machines. Their values were the "rankest hearsay." Finally, the statement of a third party to Excello's vice president regarding the value of Metlife's presses was also hearsay as to their value. This court did not err in concluding that Metlife had failed to present evidence which would overcome the presumption that the fair market value of the presses equaled the amount of the debt owed.

Metlife showed no grounds at the hearings to stay the proposed distribution or to vacate a portion of the agreed order entered on April 4, 1987. Metlife has shown no grounds at this time to grant a rehearing or a new trial as to these motions.

It is therefore ordered that the motions of Metlife Capital Credit Corporation for reconsideration of order disallowing claims and for rehearing or for new trial are denied.