In re **EXCELLO PRESS, INC., Debtor.**

Appeal of **METLIFE CAPITAL CREDIT CORPORATION From Orders Entered by the United States Bankruptcy Court in Case No. 85 B 13649, Honorable Thomas James, Bankruptcy Judge Presiding.**

No. 88 C 3978.

United States District Court, N.D. Illinois, E.D.

Aug. 25, 1988.

Robert J. Peters, Epton Mullin & Druth, Ltd., Chicago, Ill., for Metlife Capital Credit Corp.

Daniel A. Zazove, Towbin & Zazove, Chicago, Ill., for debtor.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Creditor-appellant Metlife Capital Credit Corporation ("Metlife") appeals Bankruptcy Judge Thomas James' decision barring its deficiency claim against debtor-appellee Excello Press, Inc. ("Excello") in the case of *In re Excello Press, Inc.*, 83 B.R. 539 (Bankr.N.D.Ill.1988). For the reasons set forth below, we affirm.

### I.

#### Factual Background and Procedural History

In 1980, Excello purchased two printing presses, a Harris Model M1000 and Model M110, from Litton Industries Credit Corporation, predecessor to Metlife, under a security agreement[1] in which Metlife retained a security interest in the presses. In October 1985, Excello filed a petition for bankruptcy. Metlife applied as a secured creditor, contending that Excello owed $2.7 million on the presses. On April 4, 1986, the bankruptcy court entered an agreed order in which Metlife was allowed to dispose of the presses, through sale or otherwise, and could recover from Excello up to $900,000.00 in a deficiency claim in the event that Metlife complies with the pertinent provisions of the Uniform Commercial Code ("U.C.C.") and the presses are sold for less than $2.7 million. In late August of 1986, Metlife sold the presses in a private sale for a total of nearly $1.1 million and filed for a deficiency judgment of $900,000.00. The bankruptcy court disallowed the claim on the grounds that Metlife failed to provide adequate notice to Excello of the sales and failed to rebut the presumption that the fair market value ("FMV") of the presses at the time of sale

---

1. The bankruptcy court found over Metlife's objection that the arrangement constituted a security agreement rather than a lease. Metlife does not challenge that finding in this appeal.

equalled Excello's outstanding debt, $2.7 million. The bankruptcy court later denied Metlife's motion for reconsideration and rehearing. *In re Excello Press, Inc.*, 83 B.R. 539 (Bankr.N.D.Ill.1988).

Metlife contends on appeal that it satisfied the notice provisions of the U.C.C. and proved that the FMV of the presses was less than $2.7 million, that its efforts leading up to the sale of the presses were commercially reasonable, and that the bankruptcy court through various rulings evidenced a hostility toward Metlife that resulted in an unfair hearing. We find that none of these contentions provide grounds warranting reversal of the bankruptcy court's decision and accordingly affirm.

## II.

### Discussion

In reviewing the bankruptcy court's decision, we are guided by the following standards. Conclusions of law are reviewed under a *de novo* standard. Findings of fact are reviewed under a clearly erroneous standard, *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87, 89 (7th Cir. 1986), by which we will overturn a finding of the bankruptcy court only when, "although there is evidence to support [a finding], the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed. 2d 518 (1985). Thus, the bankruptcy court's factual findings will be upheld if plausible even if a contrary view of the evidence is equally supported. *Id.* at 573–74, 105 S.Ct. at 1511; *Chicago Litho Plate Graining Co. v. Allstate Can Co.*, 838 F.2d 927, 930 (7th Cir.1988). Deference to the bankruptcy court's findings is especially appropriate when the decision rests upon the credibility of witnesses. *Torres v. Wisconsin Department of Health & Social Services*, 838 F.2d 944, 946 (7th Cir.1988).

### A. Failure to Provide Adequate Notice

■ The bankruptcy court initially concluded that Metlife failed to provide written notice of the sale of the presses in satisfaction of § 9–504(3) of the New York Uniform Commercial Code.[2] Section 9–504(3) provides that

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts.... Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor,* if he has not signed after default a statement renouncing or modifying his right to notification of sale. (Emphasis added). N.Y.U.C.C. § 9–504(3) (McKinney Supp.1988).

The New York Court of Appeals has not decided whether such notice must be written, but New York state and federal trial courts have generally interpreted this provision to allow for actual or constructive notice in the form of adequate oral communications to the debtor. *Credit Alliance Corp. v. David O. Crump Sand & Fill Co.*, 470 F.Supp. 489, 494 (S.D.N.Y.1979); *First Bank & Trust Co. of Ithaca v. Mitchell*, 123 Misc.2d 386, 473 N.Y.S.2d 697, 701 (1984); *Chase Manhattan Bank, N.A. v. Natarelli*, 93 Misc.2d 78, 401 N.Y.S.2d 404, 412 (1977). The bankruptcy court disagreed with those decisions and instead followed the line of decisions in other jurisdictions that interpreted identical U.C.C. provisions to require written notice. *Executive Financial Services, Inc. v. Garrison*, 722 F.2d 417, 419 (8th Cir.1983). *See also Jones v. First National Bank*, 505 So.2d 352, 355–56 (Ala.1987). Having found insufficient written notice, the court did not assess whether the pre-sale oral communications between Metlife and Excello constituted adequate notice.

---

**2.** Metlife contends, and the bankruptcy court agreed, that New York law governs the substantive issues in this action based on choice-of-law provisions in the contracts between the parties.

In deciding a substantive issue on which the highest state court in the jurisdiction whose law governs the diversity action has not ruled, a federal court is not bound by the pertinent decisions of that state's lower courts, but must independently predict how the state's highest court would decide the issue. *D'Acquisto v. Washington*, 640 F.Supp. 594, 619 (N.D.Ill.1986). The lower courts' decisions are useful, but not binding. *Morris v. Jenkins*, 819 F.2d 678, 680 (7th Cir.1987); *Green v. J.C. Penney Auto Insurance Company, Inc.*, 806 F.2d 759, 761 (7th Cir.1986). The parties have not cited, and our research has not revealed, any New York Court of Appeals pronouncements on what constitutes adequate notice under § 9–504(3). Thus, the bankruptcy court was not, as Metlife contends, necessarily incorrect in choosing to reject the decisions of the New York state courts and in finding that notice must be written. In any event, we need not determine whether the New York Court of Appeals would interpret § 9–504(3) to allow for oral notice because we find on the record that Metlife failed to notify Excello adequately in writing or orally.

The bankruptcy court found and Metlife neither disputed in the bankruptcy court nor disputes here that the written notice it provided—in the form of a letter of intention sent on April 23, 1986, the day prior to conclusion of the sale of the M1000 press and over a month prior to consummation of the sale of the M110 press—was insufficient to provide reasonable notice in satisfaction of § 9–504(3) of the U.C.C. Instead, Metlife contends that the following communications between and joint activities by the parties established reasonable notice: Metlife notified Excello as early as February 28, 1986, that it planned not to participate in a public auction but instead to sell the presses in a private sale; Excello assisted Metlife in finding a purchaser by providing names of potential buyers and making the presses accessible to Metlife for demonstration; the parties agreed that the presses should be sold by April 30, 1986, the date for vacating the premises. Metlife further contends that Excello had no interest in the sale price because the

court had capped the deficiency judgment at $900,000.00.

The "reasonable notification" requirement of § 9–504(3) is intended:

to give the debtor an opportunity to protect his interest in the collateral by exercising any right of redemption or by bidding at the sale, to challenge any aspect of the disposition before it is made, or to interest potential purchasers in the sale, all to the end that merchandise is not to be sacrificed by sale at less than its true value. *Mitchell*, 473 N.Y.S.2d at 702.

At a minimum, notice must assure that the debtor has sufficient time to take appropriate action to protect its interests. *Fitzpatrick v. Bank of New York*, 124 Misc.2d 732, 480 N.Y.S.2d 157, 159 (1983). The courts have not set forth a precise formulation for reasonable notice, instead evaluating the circumstances of each case in light of the purpose of the notice requirement. For example, in *Spillers v. First National Bank of Arenzville*, 81 Ill.App.3d 199, 36 Ill.Dec. 477, 400 N.E.2d 1057 (4th Dist. 1980), a case similar to the situation here, an Illinois Appellate Court held that the notice given was insufficient. The debtor there was aware that the creditor intended to sell the goods in a private sale and was making efforts to find a purchaser. The debtor was further aware that a sale was imminent. The court however found the notice inadequate because the creditor did not inform the debtor of developments arising in the expected sale. "It therefore became the duty of respondent to notify petitioner of all and every proposed private sale, or sales. Simply being aware of an impending sale is insufficient." *Id.*, 36 Ill. Dec. at 480, 400 N.E.2d at 1060. Similarly, in *Matter of Forest Enterprises, Inc.*, 64 B.R. 310 (Bankr.M.D.Fla.1986), the court found notice insufficient when the debtor learned at most that the creditor was attempting to sell the goods at a price not less than market value as ascertained by the creditor.

With these guidelines in mind, we conclude that Metlife did not provide notice to Excello sufficient to serve the purpose of § 9–504(3). Excello's interest in the sale of

the presses is clear—to assure that Metlife obtained the FMV, or better, of the presses and thereby minimized the amount recoverable in a deficiency judgment.[3] If, for example, the FMV of the presses equaled or exceeded $2.7 million, Excello would presumably act to avoid any deficiency claim in the event it obtained notice that Metlife intended to sell the presses for less than $2.7 million. Excello was aware of how Metlife intended to sell the presses and knew the identity of some of the potential buyers that Metlife planned to target. Thus, like the debtor in *Spillers*, Excello knew a sale was imminent, but no more. After the bankruptcy court issued the April 4 order, by which Metlife actually acquired the right to proceed with a sale, Metlife did not communicate to Excello any information as to whether any potential purchasers were interested and, more importantly, what prices Metlife was offering or the parties were bidding. Excello was simply given no opportunity to challenge any particular sale or assure that the price represented the true market value. Accordingly, we find that the notice was not reasonable.

### B. Failure to Rebut the Fair Market Value Presumption

■ Having failed to adequately notify Excello of the sales of the two presses, Metlife can prevail in a deficiency claim only if it rebuts the presumption that the FMV of the presses at the time of sale equaled the outstanding debt of $2.7 million.[4] In attempting to demonstrate that the presses were worth less than $2.7 million, Metlife presented the following evidence upon which it primarily relies on appeal: The sale price of the presses in 1980 was $3 million; the best price Metlife could obtain after extensive negotiations with numerous potential purchasers was

$1.1 million; Phillip Pollack, an appraiser, valued the presses in early 1985 at $1.2 million; two similar presses that Excello owned sold for $950,000 at an auction and were appraised by Pollack at $1.5 million; and an unidentified individual said each press was worth $600,000.

The bankruptcy court was not clearly erroneous in finding that this evidence was insufficient to rebut the presumption that the FMV of the presses at the time of sale equaled $2.7 million. Metlife presented no direct evidence of the FMV of the presses in April 1986 but instead asked the bankruptcy court to find from the 1980 sale price and evidence of uncertain probity as to their value in 1985 that the 1986 value was less than $2.7 million. Evidence of the 1980 sale price of $3 million was not accompanied by any evidence of the amount and quality of maintenance and service over the subsequent six years from which the court could determine with any certainty how the presses depreciated. Pollack apparently valued the presses in 1985, only a year prior to their sale, at $1.2 million. However, he never actually appraised the presses himself and had no recollection of who appraised them and by what method. His testimony was based on a report that he read. The bankruptcy court was not clearly erroneous in viewing that appraisal as not determinative of the presses' 1986 value.

Similarly, the court was not clearly erroneous in determining that the sale prices of Excello's two other presses did not establish alone or in combination with the other evidence the FMV of Metlife's presses in April 1986. Metlife conceded that those presses were different in age and in capabilities. That the Excello presses had five-color capability as opposed to the Metlife presses' four-color capability does not nec-

**3.** Metlife's contention that Excello had no interest in the sale price on account of its status as a petitioner in bankruptcy is belied by the fervor with which Excello contests the deficiency claim. In any event, the adequacy of notice hinges on the debtor's ability to assure the fairness of the sale, not its motivation for doing so.

**4.** The lower New York courts are split on whether inadequate notice constitutes an abso-

lute bar to or rebuttable presumption against a deficiency judgment. *Compare Telmark, Inc. v. Lavigne*, 124 A.D.2d 1055, 508 N.Y.S.2d 737 (1986) *and Credit Car Leasing Corp. v. DeCresenzo*, 138 Misc.2d 726, 525 N.Y.S.2d 492 (1988). Since we find that Metlife has failed to rebut the presumption, we need not predict whether the New York Court of Appeals would adopt the absolute bar or rebuttable presumption.

essarily prove that their FMV in April 1986 was greater than that of the Metlife presses. Finally, the actual price at which Metlife sold the presses does not establish their FMV, especially in circumstances such as here in which the secured creditor did not comply with § 9–504(3) of the U.C.C., *Colorado Leasing Corp. v. Borquez,* 738 P.2d 377, 380 (Colo.App.1986) (interpreting an identical notice provision). Accordingly, the bankruptcy court's decision that Metlife failed to rebut the presumption of equal value was not clearly erroneous and is therefore affirmed.

### C. The Bankruptcy Court's Treatment of Metlife

 There is no merit to Metlife's contention that the bankruptcy court's decisions and statements evidenced a hostility to Metlife that rendered the hearing unfair. In each instance to which Metlife directs our attention, the bankruptcy court was warranted in disagreeing with Metlife's contention or posture. The bankruptcy court made several evidentiary rulings to which Metlife objected. In each instance, the court's decision was supported by the law. For example, as discussed in the previous section of this opinion, the court's finding Pollack's appraisals "suspect" and of limited probative value had a sound basis in the evidence. Similarly, the court's decision to exclude the testimony of William Lucas, a Metlife officer, as to his opinion of the commercial reasonableness of Metlife's efforts to sell the presses was warranted by the fact that Lucas was attempting to render a legal conclusion best left to the court and, in any event, there was no prejudice since the court did not need to address the issue of commercial reasonableness. The remarks that the court made during the hearing were merely expressions as to its view as factfinder of the probity and materiality of certain evidence and in no way suggested an unwillingness to give any consideration to the evidence.

### III

### Conclusion

The record demonstrates that Metlife failed to provide sufficient notice of the sales of the presses. The bankruptcy court's decision that Metlife failed to rebut the presumption that the fair market value of the presses at the time of sale was less than the outstanding debt is supported by the law and not clearly erroneous. The bankruptcy court did not evidence any hostility to Metlife that rendered the hearing unfair. Accordingly, we affirm. It is so ordered.