OPINION OF THE COURT
Nat H. Hentel, J.
There are times when doing justice appears to create injustice, and this is apparently one such time.
The instant case is before this court on remand from the Appellate Term which reversed the Civil Court’s granting of summary judgment in favor of defendant.
The underlying facts are not in dispute and have been stipulated to between the parties.
Plaintiff is the third purchaser of a 1978 Chevrolet Chevette encumbered by a lien of approximately $5,300, recorded and perfected by defendant in 1978, when the car was bought new and financed by the original purchaser. The original purchaser defaulted in his payments at approximately the same time that he had amassed a number of unpaid parking violation tickets. Another lien for the unpaid tickets was placed upon the car by the Parking *1070 Violations Bureau of the City of New York. Subsequently, the car was impounded by a city marshal pursuant to a judgment obtained by the Parking Violations Bureau; and was sold thereafter at public auction without defendant’s knowledge. It is conceded by the parties that subsequently the Department of Motor Vehicles had issued a clear title to the second purchaser, having negligently dropped defendant’s lien from its records after the lien of the Parking Violations Bureau had been satisfied. About two years later, plaintiff purchased the Chevette from the second purchaser, and became the third owner of the car. Plaintiff obtained, once again, a negligently issued clear title from the Department of Motor Vehicles.
The issues of the priority of the liens, and the negligence of the Department of Motor Vehicles have been determined by the Appellate Term, Second Department, on December 14, 1983. It affirmed the findings of the Civil Court that “defendant had the right to take possession of the collateral pursuant to its perfected security interest regardless of the administrative negligence of the Department of Motor Vehicles”; and found that “[a] perfected security interest takes priority over a purchaser of the collateral, even though that purchaser is without knowledge of the lien” (Fitzpatrick v Bank of New York, 124 Misc 2d 732, 733 [emphasis supplied], citing Vehicle and Traffic Law, § 2118, subd [a]; Uniform Commercial Code, § 9-307; White Star Distrs. v Kennedy, 66 AD2d 1011).
The Appellate Term, however, did not resolve the issue of whether or not the requisite notice required by subdivision (3) of section 9-504 of the Uniform Commercial Code as to the time and place of the sale of the collateral had been furnished to the debtor, neither side having had presented sufficient evidence of same at the time of the appeal. Parenthetically, section 9-105 (subd [1], par [d]) of the Uniform Commercial Code does not require the “debtor” to be the owner or have rights in the collateral. Thus, plaintiff herein would be entitled to notice of the marshal’s sale.
During trial, plaintiff called as a witness Leonard Kaplan, an attorney, with whom plaintiff had consulted immediately after his car was seized. Mr. Kaplan testified that *1071 on August 9,1982, three days after the car had been taken, he had a conversation with a Mr. Zinn, who had represented himself as an attorney for the bank in repossession cases, and whose name had been supplied by plaintiff. The “bank’s attorney” informed him of defendant’s lien, and offered to mail a copy to him. Mr. Kaplan, shortly thereafter, caused a copy of a summons and complaint on behalf of plaintiff seeking replevin, or in the alternative, money damages, to be served upon defendant on August 16,1982.
During this time, Mr. Kaplan had been in communication by letter and telephone with the Department of Motor Vehicles in order to determine record ownership of the car in question.
When plaintiff advised Mr. Kaplan that he had stored items of personal property in the car at the time of its seizure, he again spoke to the “bank’s attorney” on or about September 10, 1982, to warn him to safeguard plaintiff’s personal property. The bank’s attorney then first informed Mr. Kaplan that the car had been sold at auction on August 27, 1982.
Mr. Kaplan and plaintiff both deny receiving any proper notification, written or oral, about the sale.
Defendant called Mr. Zinn as a witness. He testified that he had represented defendant in repossession of the car, but is not a bank employee. He agreed that he had spoken to Mr. Kaplan on August 9, 1982, and that he had explained the chain of title. He explicitly remembered that he had told Mr. Kaplan on August 9,1982, that the car was to be sold at public auction on August 27,1982, at his office at 9:00 a.m. He testified that the auctioneer usually sends out notices of sale to debtors, and it was unlikely that such notice would be sent to the debtor’s attorney. He further denied knowledge of any action instituted against the bank as of August 16, 1982 in this matter.
It is conceded that notice had in fact been sent to plaintiff at an incorrect address by certified mail, which was returned as undeliverable a few days before the sale. Another certified letter apparently was sent to another address, but plaintiff denied receipt of this letter as well. *1072 No letter of notification or a copy of same was introduced into evidence.
The car was sold on August 27, 1982 for $1,700 to a wholesaler. Plaintiff now demands judgment for damages in the amount of $3,400, the alleged value of the car as of the date of seizure.
Section 9-507 of the Uniform Commercial Code gives the debtor the right to affirmative relief in the event he suffers damage caused by a secured party’s failure to timely notify him of the sale of the collateral in question. The debtor must be notified “of the time and place of any public sale”. (Uniform Commercial Code, § 9-504, subd [3].) By statute, this provision may not be “waived or varied”. (Uniform Commercial Code, § 9-501, subd [3], par [b]; emphasis supplied; see Marine Midland Bank-Central v Watkins, 89 Misc 2d 949.)
Thus, the pivotal issue to be determined by this court is whether or not notice had been given to plaintiff in accordance with the statute.
In reversing the granting of summary judgment in defendant’s favor, the Appellate Term found that:
“It is evident from a review of defendant’s affidavits that defendant has not established or even alleged compliance with the notice requirements of subdivision (3) of section 9-504 of the Uniform Commercial Code * * *
“Even were it to be assumed that the letter sent to plaintiff contained notification of the time and place of the sale, such notice cannot be considered reasonable inasmuch as it was mailed on August 25 and the car was sold on August 27. While reasonable notification is not defined in section 9-504 of the Uniform Commercial Code, at a minimum, the notice must be sent so that persons entitled to receive it have sufficient time to take appropriate action to protect their interests (54 NY Jur, Secured Transactions, § 286; Marine Midland Bank-Rochester v Vaeth, 88 Misc 2d 657) * * *
“It should be noted that where, as here, disposition of the collateral has been completed, the debtor or any other person entitled to notification, such as plaintiff, may recover from the creditor any loss caused by the creditor’s *1073 failure to give reasonable notice or to sell in a commercially reasonable manner (Uniform Commercial Code, § 9-507, subd [1]; § 9-112; Security Trust Co. v Thomas, 59 AD2d 242).” (Fitzpatrick v Bank of New York, supra, pp 734-735.)
Mr. Zinn’s testimony is now offered at trial to establish that proper notice was given in conformance with subdivision (3) of section 9-504 of the Uniform Commercial Code, pursuant to the remand of the Appellate Term. His testimony, however, has not impressed the court that such proper notice had indeed been given. This court finds that defendant did not take steps reasonably required by statute to inform plaintiff of the forced sale under all the circumstances herein. Mr. Zinn was aware that plaintiff was represented by an attorney on August 9, 1982, and knew his name and address.
When he corresponded with Mr. Kaplan by letter, he could have noted the time and place of sale if, indeed, he had given such information orally to Mr. Kaplan. This court questions the credibility of the testimony concerning alleged oral notification during the time of the Kaplan-Zinn first conversation on August 9, 1982. He was further aware that the certified letter was returned almost immediately before the scheduled date of the sale. He knew or should have known that an action had been commenced against the bank on or about August 16, 1982, nine days prior to the forced sale.
At the very minimum, the institution of this replevin action should have stayed any disposition of the collateral. Defendant may not escape liability because of Mr. Zinn’s employment as “outside” rather than “house” counsel. Mr. Zinn testified that while the summons and complaint may have been served on the bank, he obtained no knowledge of such service. This court finds that defendant had an obligation to notify Mr. Zinn upon receipt of the summons and complaint in order to stop the sale when the collateral to be disposed of was the subject of a lawsuit commenced well before the scheduled auction.
Subdivision (26) of section 1-201 of the Uniform Commercial Code states:
“A person ‘notifies’ or ‘gives’ a notice or notification to another by taking such steps as may be reasonably re *1074 quired to inform the other in ordinary course whether or not such other actually comes to know of it. A person ‘receives’ a notice or notification when:
“(a) it comes to his attention; or
“(b) it is duly delivered * * * at any * * * place held out by him as the place for receipt of such communications.” (Emphasis added.)
As a matter of law, this court finds that defendant did not give nor was notice received by plaintiff of the forced sale.
Plaintiff, nevertheless, is in an anomalous position. An examination of the applicable statutory and case law reveals that it is imperative for a debtor to receive notice of a dispositional sale in order to protect his right to reduce his potential liability at the sale. It gives the debtor an opportunity to bid at the sale, safeguard his right of redemption and permit him to reduce his potential liability by utilizing all practicable means of doing so. (Chase Manhattan Bank v Natarelli, 93 Misc 2d 78; Marine Midland Bank-Rochester v Vaeth, 88 Misc 2d 657.) A debtor, then, knowing the time and place of sale may then move to protect himself by protesting against an unreasonable disposition of the collateral and insuring that the property is not sacrificed by a sale at less than its true value.
He might also, pursuant to section 9-506 of the Uniform Commercial Code redeem the collateral “by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys’ fees and legal expenses.” However, timely notice is essential since the right to redeem exists any time before the disposition of the collateral.
Proper notice also creates rights of the creditor as against the debtor for a deficiency judgment as well. “The Uniform Commercial Code is silent as to the rights of the creditor to recover the deficiency when it has not given reasonable notice of the sale to the debtor or has not sold the collateral in a commercially reasonable manner”. (Security Trust Co. v Thomas, 59 AD2d 242, 245.)
*1075 The current case law in New York has interpreted a failure to notify pursuant to subdivision (3) of section 9-504 of the Uniform Commercial Code as being fatal to a secured creditor’s right to a deficiency judgment. (See Porta Aluminum v Long Is. Trust Co., 63 AD2d 670; Security Trust Co. v Thomas, supra; Manufacturers Hanover Trust Co. v Goldstein, 25 AD2d 405; Leasco Data Processing Equip. Corp. v Atlas Shirt Co., 66 Misc 2d 1089.)
What, then, must plaintiff prove in order to recover? “[S]ection 9-507 of the Uniform Commercial Code requires the debtor * * * to show the ‘loss caused by a failure’ to give the required notice. In other words, to show how he was damaged; how he was prejudiced.” (Leasco Computer v Sheridan Inds., 82 Misc 2d 897, 898-899; Stanchi v Kemp, 48 AD2d 973.)
Where the debtor is primarily responsible for satisfying the lien, the benefit and necessity for notice is readily apparent. Since he will be liable for a deficiency judgment, he should be able to minimize his damages or, if possible, satisfy the full indebtedness and thus reclaim his property.
But, in the instant case, plaintiff, “even though without knowledge of the bank’s interest and relying on the erroneous certificate of title issued for the vehicle, nevertheless, can acquire no greater rights to the vehicle than that possessed by [the] purchaser at the marshal’s auction * * * (Uniform Commercial Code, § 9-306, subd [2]; Matter of General Motors Acceptance Corp. v Maloney, 46 Misc 2d 251; Matter of Intermediate Credit Corp. v Overseas Nat. Airways, 41 Misc 2d 522).” (Fitzpatrick v Bank of New York, 124 Misc 2d 732, 733 [App Term, 2d Dept], supra.) Thus, in actuality, all plaintiff owned was a car encumbered by a $5,300 lien and his personal property therein contained.
Certainly, it would not have been prudent for plaintiff to redeem a 1978 Chevette for $5,300, plus costs, arising from the seizure and sale. He was not liable for a deficiency judgment since he was not the obligor on the original loan.
In essence, plaintiff had no interests to protect. The car, it has been determined by the Appellate Term, was repossessed legally by defendant in accordance with its rights.
*1076 There is testimony, however, that plaintiff’s personal property concededly worth $130 was in the car at the time of seizure. Pursuant to section 9-507 of the Uniform Commercial Code, this constitutes his actual damages. This court agrees with the Appellate Term and the Civil Court that plaintiff should pursue his rights against the Department of Motor Vehicles of the State of New York whose negligence error in issuing clear title lulled the innocent plaintiff into this trap.
Therefore, judgment for plaintiff in the amount of $130 only, plus interest, costs and disbursements.
There are times when doing justice appears to create injustice, and this is apparently one such time.