OPINION OF THE COURT
Alice Schlesinger, J.
Defendants, Theresa DeCresenzo and Michael Alfano, move pursuant to CPLR 3211 to dismiss the complaint. Plaintiff, Credit Car Leasing Corp., opposes the motion.
Theresa DeCresenzo leased a 1983 Cadillac Coupe de Ville from Credit Car Leasing Corp. The lease provided that DeCresenzo was to pay $375 for 48 months. A second document attached to the lease entitled "Supplement to Motor Vehicle Lease” contained a provision allowing DeCresenzo the option to purchase the car for $7,500. Michael Alfano signed the lease as guarantor.
DeCresenzo made all 48 payments, totaling approximately $19,000, and returned the car as she decided not to exercise the purchase option. Credit Car Leasing sold the Cadillac to a third party for the sum of $2,500. Plaintiff then sued defendants for the deficiency balance. This balance is sought pursuant to a provision in the lease supplement which provided that in the event the lessee failed to purchase the vehicle, the lessor would sell the vehicle and the lessee would be liable for the deficiency between the option price and the wholesale price.
The defendants’ position is that the lease in substance was a sale of the car. They contend that the lease was intended as security for the payment of the purchase price. Therefore the transaction is governed by article 9 of the Uniform Commercial Code. They assert that the action must be dismissed *728 because plaintiff failed to provide them with notice as required by UCC 9-504 (3) before selling the vehicle.
The plaintiff’s position is that the lease was not intended as a security interest, therefore article 9 does not apply to the deficiency balance. In the alternative it contends that UCC 9-504 is not triggered as there was no "default” by defendants.
The contract between the parties is entitled "Motor Vehicle Lease” and lists Credit Car Leasing as "lessor” and DeCresenzo as "lessee”.
The lease provides that in addition to a "Fixed Monthly Rental” for the vehicle the lessee agrees to pay a monthly "Sales or Use Tax”. It required DeCresenzo to pay a "Down-payment” as well as "Initial title, License and Registration Fees”.
Further, the lease holds lessee responsible for vehicle maintenance, specifically requiring her to "pay for all maintenance and repairs to vehicle.” Additionally, the lessee must provide all automobile liability and property damage insurance.
The lessor provided no express or implied warranties and transferred the vehicle "as is”.
While the lease states that the vehicle’s title shall be in lessor’s name, the lessee is to bear all registration and vehicle inspection costs, pay all taxes and "other charges”.
The termination clause provides that the lease may be terminated without notice, for failure to pay rent or perform any other covenant or upon insolvency or upon levy of the vehicle. Upon termination the lessee is required to pay as liquidated damages the balance of the lease period.
The damage clause sets forth that lessor may either seek consequestional damages incurred from commencement of the lease through termination or liquidated damages in a sum equal to 50% of the balance of rentals following termination.
While the lease specifically states that the agreement hear-in is a "lease only”, clause 18 provides for a "security interest retained by lessor or its assignee” in the vehicle.
Finally, the lease provides that the lessee indemnify the lessor "from all claims, suits, damages or losses * * * sustained by lessor * * * from the breach by lessee of any provision of this lease * * * or the ownership, condition, maintenance, use or operation of vehicle by any one including without limitation, lessee.”
The "Supplement to Motor Vehicle Lease” provides that *729 upon expiration or premature termination of the lease the defendant has the option to purchase the vehicle for a price "equal to the total of all monthly payments, less the aggregate of the monthly depreciation reserve of $375.00 for 48 months plus the option sum of $7,500.”
Further, the supplement states as follows: "If we [the defendants are denoted as the lessors in this supplement] do not exercise said purchase option [of $7,500], then on the expiration or sooner termination of the lease we shall nevertheless be obligated to pay you [Credit Car Leasing] an amount equal to the above stated option price. At that time we will return the car to you and if we fail to do so you shall have the right (but shall not be obliged) to repossess it. On the return or repossession of the car you will make reasonable efforts to sell it at such time and place, for such price and on such terms as you may deem advisable. We agree to pay you any deficiency and shall be entitled to share any surplus equally with you”.
Finally, the contract states that "your [defendants’] rights but not your obligations under the lease, as hereby supplemented, are being contemporaneously assigned to Tilden (Financial Institution), which has a purchase money security interest in the Car and Lease.”
The first question before this court is whether the lease intended to establish a security interest. UCC 1-201 (37) provides in pertinent part that: " 'Security interest’ means an interest in personal property or fixtures which secures payment or performance of an obligation * * * Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.”
The supplement to the lease contains an option provision allowing purchase of the car for $7,500. In light of the total sum of the rental, $19,110.12, $7,500 appears not to be nominal consideration. (See, Rebhun v Executive Equip. Corp., 90 Misc 2d 576 [Sup Ct, Nassau County 1977]; cf., Jefferds v Ellis, 127 Misc 2d 477 [Sup Ct, Cattaraugus County 1985], revd on other grounds 122 AD2d 595 [1986]; National Equip. Rental v Priority Elecs. Corp., 435 F Supp 236 [ED NY 1977].)
*730 However, the court’s scrutiny does not stop here. UCC 1-201 (37) states: "Whether a lease is intended as security is to be determined by the facts of each case”. In making this determination the intent of the parties controls. (Van Alphen v Robinson, 71 AD2d 1039 [3d Dept 1979]; Guardsman Lease Plan v Gibraltar Transmission Corp., 129 Misc 2d 887 [Sup Ct, Suffolk County 1985].) Accordingly, the court will consider all relevant factors (Barco Auto Leasing Corp. v PSI Cosmetics, 125 Misc 2d 68 [Civ Ct, NY County 1984]) including the terms and conditions of the lease (Guardsman v Gibraltar Transmission Corp., supra) "look[ing] beyond the language used to determine the rights and obligations of the parties.” (Matter of Tillery, 571 F2d 1361, 1364-1365 [5th Cir 1978].)[1]
The form of the transaction may not be exalted over the substance of the transaction. (See, Matter of Tillery, supra.) Where the lessor retains title but "passes all the risk and indicia of ownership of the vehicle to the [lessee]” (Avis-Rent-A-Car Sys. v Franklin, 82 Misc 2d 66, 67 [App Term, 2d Dept 1975]) courts are inclined to find that the lease is in fact a security interest.
One of the hallmarks of a lease intended for security is the creation of an equitable or pecuniary interest in the lessee. (Matter of Tillery, supra.)
In Matter of Tillery (supra), once the lease had run its full term the lessee was required to return the vehicle to the lessor at which time the lessor would sell the vehicle at the highest available wholesale price. The lessor would then offset from this amount the depreciated value of the vehicle. The lessee would be liable for any deficiency between the difference in the wholesale price and the depreciated price of the vehicle. On the other hand, the lessee was entitled to the gain in the event the wholesale price was greater than the depreciated value of the vehicle. The Court of Appeals found that the lessee had an equity interest in the vehicle as he was required to assume the loss or receive the gain from the wholesale disposition.
Similarly, in the case at bar the lease supplement provides that if the defendant fails to exercise the purchase option she would be liable for the deficiency. Conversely, she would be entitled to an equal share of any surplus from the resale of *731 the vehicle. Thus the lessee has a pecuniary interest in the lease.
Another indication of a lessee’s equity interest is the fact that the rental payments meet or exceed the retail purchase price. (Matter of Tillery, supra; Guardsman v Gibraltar Transmission Corp., supra.) Defendants made payments in the sum of $19,485.12 for the vehicle. Additionally, they were required to pay $7,500 at the termination of the lease. While no evidence is adduced as to the retail purchase price of the vehicle it is reasonable to assume that the total payment of $26,985.12 represents the retail price plus interest over four years.
There are additional relevant factors in making the determination that the agreement is a sale and not a true lease arrangement.
The lessee is required to obtain and maintain full insurance coverage for the vehicle (Guardsman v Gibraltar Transmission Corp., supra), thus protecting her interest in the vehicle. (Matter of Tillery, supra.)
The lessee must pay all license, registration, inspections costs, including "all taxes” and "other charges”. Such expenses are usually borne by owners of motor vehicles. (Matter of Tillery, supra.)
The lessee has covenanted to indemnify the lessor from all claims, suits or damages. (Matter of Tillery, supra.) All risk is assumed by the lessee, another indication of an ownership interest in the vehicle.
The lessee paid a "downpayment” of $405.94 on the vehicle. (Matter of Tillery, supra.) Again, such a payment is usually made where the transaction is a sale.
The lessor required a third-party guarantee of the lessee’s rental obligations. (Guardsman v Gibraltar Transmission Corp., supra.)
The lease specifically states that the lessor retains a security interest in the vehicle. The lessor contemporaneously assigned its interest in the vehicle to Tilden, a financial institution, which established a purchase money security interest in the vehicle and lease.
These clauses evince an attempt by the lessor and its assignee to protect their interest in the collateral. It implies that the lessee defendant has a pecuniary interest in the collateral and that the lessee’s other potential creditors may have an interest in it as well. Therefore, the lessor and *732 assignee have tried to establish rights in the collateral that are superior to the rights of other creditors. If the transaction had been that of a "pure” lease it would have been unnecessary to protect the collateral in this manner.
Accordingly, based on all the facts and circumstances the court concludes that the lease was intended as a security interest.[2]
The second question before this court is whether plaintiffs failure to give notice of the sale of the vehicle as required by section 9-504 (3) of the UCC precludes recovery of any deficiency judgment.
Theresa DeCresenzo in an affidavit swears that the car was sold without notice to her of the impending sale. This statement is unrebutted by plaintiff. Instead, plaintiff chooses to make its stand on the ground that UCC 9-504 does not apply to the facts of this case. It asserts that the lessee was not in "default” since all the required rental payments had been made and the vehicle returned.
The court is not persuaded by this contention. "Default” is defined by Black’s Law Dictionary 376 (5th ed) as "the omission or failure to perform a legal or contractual duty”. (See also, 79 CJS Supp, Secured Transactions, § 98, at 114 [Default of Debtor].) Defendants had a legal duty to either exercise the option or pay plaintiff an amount equal to the option. They did neither, thus could be said to be in default.
Article 9 does not specifically state what the debtor’s remedies are in cases where the creditor fails to give notice before disposing of the collateral. However, a number of courts have held that failure to comply with notice requirements pre *733 eludes recovery. (See, Long Is. Trust Co. v Porta Aluminum, 63 AD2d 670 [2d Dept 1978]; Security Trust Co. v Thomas, 59 AD2d 242 [4th Dept 1977]; Maguire Leasing Corp. v Falb & Co., 49 AD2d 540 [1st Dept 1975, dissenting opn]; Avis-Rent-A-Car Sys. v Franklin, supra; Marine Midland Bank-Central v Watkins, 89 Misc 2d 949 [Sup Ct, Onondaga County 1977]; Leasco Data Processing Equip. Corp. v Atlas Shirt Co., 66 Misc 2d 1089 [Civ Ct, NY County 1971, Sandler, J.].) Other courts have concluded that for a forfeiture to occur the debtor must show that he was prejudiced by the creditor’s failure to give proper notice. (See, UCC 9-507; Leaseco Computer v Sheridan Indus., 82 Misc 2d 897 [Civ Ct, NY County 1975], and cases cited therein.)
In Leasco Data Processing Equip. Co. v Atlas Shirt Co. (supra), Judge Sandler’s finding that notice was a condition precedent to recovery of a deficiency judgment was based on a "firmly established” pre-UCC principle. (Supra, at 1090.) This court agrees with Judge Sandler’s reasoning and holds that under these circumstances failure to notify the debtor of the sale precludes recovery of any deficiency judgment. The rule is sound because "[i]t gives the debtor an opportunity to bid at the sale, safeguard his right of redemption and permit him to reduce his potential liability by utilizing all practicable means of doing so * * * A debtor, then, knowing the time and place of sale may then move to protect himself by protesting against an unreasonable disposition of the collateral and insuring that the property is not sacrificed by a sale at [a price] less than its true value.” (Fitzpatrick v Bank of N. Y., 125 Misc 2d 1069 [Civ Ct, Queens County 1984].) The burden on the creditor to comply with the notice provision is minimal in light of the benefit to the debtor’s ability to protect his or her interest in the collateral.
In the case of Long Is. Trust Co. v Williams (133 Misc 2d 746 [Civ Ct, NY County 1986]) this court held that failure to comply with UCC 9-504 (3) did not preclude recovery provided the creditor at trial could prove the amount of the debt, the fair market value of the collateral and the resulting deficiency. However, that case is distinguishable as my finding there was that the notice to the debtor was insufficient because it was sent to him 8 days before the sale rather than 10 as required by the contract between the parties. In the instant case plaintiff failed to send any notice of the sale to either defendant.
*734 In view of the above, defendants’ motion to dismiss the action is granted. Defendants’ counterclaims are dismissed as moot. Plaintiffs cross motions to strike the counterclaims and to compel answers to interrogatories are denied as moot as well.

. While Matter of Tillery (571 F2d 1361) arose in the 5th Circuit the UCC provision interpreted by the court there is identical to the New York UCC provision at issue here.

. While the defendants have failed to raise the affirmative defense of unconscionability, it might be relevant here. On the one hand the lessee is specifically given the option to purchase, i.e., a choice, and on the other hand the option is taken away as the lessee is liable for the option price even if she fails to purchase the vehicle! Additionally, the lease and supplement attempts to provide the lessor and assignee with article 9 creditor’s rights, however, fails to provide article 9 debtor’s right to the lessee.
However, the court does not reach this issue. This defense would be more appropriately raised on a motion for summary judgment or at a hearing where a determination on the issue of meaningful choice in the negotiation of the contract could be made. (See, Matter of State of New York v Avco Fin. Serv., 50 NY2d 383 [1980]; Barco Auto Leasing Corp. v PSI Cosmetics, 125 Misc 2d 68.)