Fremont-Smith, J.
This case was heard on assessment of damages after the Court had allowed plaintiffs motion for summary judgment on liability. The Court found that the defendant physician had entered into a binding agreement pursuant to which plaintiff provided defendant with office computer equipment and software under a “lease agreement.” The agreement called for payments of $233.24 a month for sixty months (a total of $13,994) after which the equipment and software was to be returned to the plaintiff, which had purchased it from third-party defendant Long-wood Systems, Inc. for $9,700. The equipment and software never worked, and, after making payments of $1,399.44, defendant refused to make further payments. Plaintiff then repossessed the equipment and software and thereafter retained possession thereof. It now seeks recovery of the balance of the payments ($12,054.96), late charges ($163.23), interest ($4,981.30), attorneys fees ($16,720.56) and repossession expenses ($195). Thus, plaintiff seeks a total of $34,123.05 in damages arising out of its provision of software and equipment to defendant which, there is no dispute, never worked as intended, and from which the defendant obtained no beneficial use.
It is true that the agreement contained provisions which disclaimed all warranties and contained additional provisions which obligated defendant to make the payments regardless of whether the equipment and software worked as contemplated.
It is also true that under Collela v. Essex Count Acceptance Corp., 288 Mass. 221, 227 (1934), a seller under a conditional sales contract was held to be permitted to repossess the subject property under the purchase contract and, in addition, collect the entire outstanding balance due under the contract, and was not obligated to choose between these two remedies, where the contract so provided. Id. See also Bedard v. C.S. Ransom, Inc., 241 Mass. 74, 77-78 (1922) (holding that contract provisions allowing seller the right to repossess the property and also the right to recover entire balance due on the contract as liquidated damages, were valid, as the parties were free to enter into such a harsh contract).[1]
The decisions in Collela and Bedard, however, preceded the enactment of the U.C.C. by the Massachusetts Legislature in 1957. General Laws chapter 106, §1-101 et seq. as inserted by St. 1957, c. 765, §1, and the comment to the 1957 enactment of the secured transactions article of the U.C.C., indicate that its provisions were intended to replace the prior law of conditional sales. See G.L.c. 106, §§9-101 and 9-102(b)(2), and comments. Therefore, the U.C.C. supplants the holdings in Collela and Bedard regarding the potential “double” recovery of sellers in conditional sales agreements, if the agreement is actually a conditional sale agreement, rather than an equipment lease. G.L.c. 106, §9-505 and comment regarding retention of collateral. Although the agreement here was styled an “equipment lease agreement,” whether an agreement is really a lease or is rather a security agreement, is, in every instance, a question for the trier of fact. G.L.c. 106, §1-201 (37).
In Carlson v. Giacchetti, 35 Mass.App.Ct. 57 (1993), the Appeals Court pointed out that, if the obligations of the lessee under the lease are not subject to termination by the lessee, and if the lease is for the full economic life of the goods, there is some indication that a security interest was intended to be created. Id. at 63. The lease agreement, ¶14, moreover, provides that New York law shall govern the operation and interpretation of the lease. In Credit Car Leasing Corp. v. DeCresenzo, 525 N.Y.S.2d 492, 495 (1988), the court found that “(w]here the lessor retains title but ‘passes all the risks and indicia of ownership of the vehicle to the [lessee]’ courts are inclined to find that the lease is in fact a security interest.” Id.
Here, as in DeCresenzo, the lessee (defendant) was made responsible for maintenance and repair, and was obligated to insure against any damage to the equipment. Here, moreover, the rental fees were to exceed the entire purchase price of the equipment. In addition, defendant executed a separate document entitled “option to purchase” the equipment, whereby he could purchase the equipment for just $1.00 in addition to the rental payments. Accordingly, the Court finds that the agreement was, in fact, a security agreement which is subject to the provisions of the New York Uniform Commercial Code.
New York Uniform Commercial Code, Section 9-505(2) provides that:
... a secured party in possession may, after default, propose to retain the collateral in satisfaction *238 of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection. In the case of consumer gopds no other notice need be given. In other cases notice shall be sent to any other secured party from whom the secured party has received (before sending his notice to the debtor or before the debtor’s renunciation of his rights) written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification within twenty-one days after the notice was sent, the secured party must dispose of the collateral under section 9-504. In the absence of such written objection the secured party may retain the collateral in satisfaction of the debtor’s obligation.
Here, there was no evidence that such notice was sent, and the Court finds that it was not.
In Shawmut Bank, N.A. v. Chase, 34 Mass.App.Ct. 266 (1993), vacated on other grounds, 416 Mass. 1008 (1993), the Appeals Court held that, as a consequence of a creditor’s failure to live up to the collateral disposition requirements of the U.C.C., there exists arebut-table presumption that the value of the collateral is equal to the unpaid debt owed by the creditor, and that the burden of proof is on the debtor to prove that the remaining debt exceeds the fair market value of the collateral. Id. at 272. Here, although a rough estimate was proffered as to the residual value of the equipment, no factual basis was provided therefor, and no value was placed on the software. Accordingly, the Court finds that the presumption of Shawmut Bank, supra, was unrebutted by credible evidence, so that the value of the repossessed collateral is to be presumed to be equal to the unpaid deficiency owed under the agreement.
Under the law of New York, which controls here, the result is the same. Thus, in H.V. Funding, Inc. v. Ernest Vakkas & Sons, Inc., 531 N.Y.S.2d 484, 486 (1988), the court held that, where a creditor repossessed the collateral and, without giving the required notice to the debtor, held the property for an unreasonable length of time (i.e. for over one and one-half years) the creditor waived its right to sue for the balance. There, the court said:
It is this court’s view that the default provision set forth above is contrary to UCC 9-505, which is specifically concerned about the debtor’s interest in the repossessed property. The secured party cannot just retain valuable property and ignore its value when making claim against a debtor.
UCC 9-505 is clear. If the secured party wishes to retain the collateral in satisfaction of the obligation, it should send out a written notice to debtor who could demand a sale under UCC 9-504. And further, this court holds that if the secured party fails to send such written notice and holds the property an unreasonable amount of time, it has waived its rights to sue for the balance. In this case, the secured party has held the equipment since August 1986, up to and including the trial of April 1988, all to the prejudice of the defendants.
Here, as in H.V. Funding, Inc., the plaintiff not only failed to provide defendant with the written notice required under the U.C.C. (N.Y.U.C.C. §9-505), but also repossessed the equipment in June, 1993, and then held it for over two years. It has therefore waived its right to sue for the deficiency under New York law. See also In re Nardone, 70 B.R. 1010, 1017 (Bankr. D.Mass. 1987) (a secured party’s retention of collateral for two years without making any effort to sell or otherwise dispose of it was commercially unreasonable).
ORDER
For the reasons stated above, the Court finds that defendant owes the plaintiff nothing and orders that judgment enter for the defendants.[2]

In the present case, the lease agreement provisions are so one-sided that the Court would be inclined to find.them void pursuant to G.L.c. 106, §2-302 and Waters v. Min Ltd., 412 Mass. 64 (1992), were it not for the decision in Patriot General Life Ins. Co. v. CFC Investment Co., 11 Mass.App.Ct. 857, 862-63 (1981).

As the Court finds that no recovery is due, there were no attorneys fees incurred by plaintiff “to recover any monies due or to become due hereunder.”