OPINION OF THE COURT
Richard O. Tolchin, J.
Motion by defendant Lillian Terry for summary judgment. Defendants, Terry and Jenkins, mother and daughter respec *437 tively, are colessees under a lease dated September 9, 1988 of a Pontiac "Sunbird”. Movant signed as colessee to support the rental to her daughter. The lease set forth the terms of rental, 60 months and for payments of $215.35 per month and provided lessor with rights to repossess in event of default thereunder. The agreement recited that the lease was between plaintiff Oxford and Vivian Jenkins, and stated her residence as 2009 Cruger Avenue, Bronx, New York 10468. Above her name on the document is printed in ink the name "Lillian” with no last name or address. The lease is signed by Vivian Jenkins as "lessee”, and is also signed by Lillian Terry as "co-lessee”.
When defendant Jenkins failed to make her payments, plaintiff’s credit representatives wrote to her in an effort to bring the account current. When she failed to do so, plaintiff repossessed the vehicle and placed it up for public sale. It is conceded that no notice of default was given to Lillian Terry and that no notification of the date and place of the public sale was given to either Jenkins or Terry. The vehicle was sold at public auction on January 28, 1992. Terry states that from the date that the lease was signed until the present, she has resided at 2727 Palisades Avenue, which is in the Riverdale area of the Bronx.
Paragraph 22 of the lease provides that any "notices” must be sent to the "appropriate party at the address shown above”. The only address plaintiff inscribed thereon was Jenkins’ address. After the sale of the vehicle, plaintiff sued both lessees seeking a deficiency judgment. Jenkins defaulted in answering the complaint herein and plaintiff entered judgment against her on December 11, 1992. Defendant Terry’s answer denies any obligation to plaintiff upon the basis that plaintiff had failed to notify her of her daughter’s default and of the public sale. She alleges that plaintiff knew her address, and that she did not live near her daughter and had no knowledge that her daughter had defaulted under the lease agreement. She also claims that she had a "falling out” with her daughter soon after signing the lease and had no contact with her thereafter.
Terry alleges that she had a "security interest” under the lease requiring plaintiff to notify her of default under the lease and of sale of the vehicle based thereon.
Plaintiff, in opposition, denies that Terry obtained a security interest entitling her to such notice, and under the terms of *438 the lease it could, repossess the vehicle and sell it without giving the lessees advance notice thereof. Having sold it, plaintiff claims it has the right to a deficiency judgment and seeks to enforce that claimed right to obtain the difference between what was due under the lease and what was obtained at the public sale.
The statute controlling the duties owed by a secured creditor before repossessing and selling secured collateral is UCC 9-504 (3) which requires: "reasonable notification of the time and place of any public sale.” It further provides: "In the case of consumer goods no other notification need be sent. In other cases notification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor or before the debtor’s renunciation of his rights) written notice of a claim of an interest in the collateral.”
As stated, defendant Terry contends that the obligations imposed on her under the lease gave her the status of a "secured party”. She refers to other cases which she alleges are factually similar to the case at bar which held the lessee to have a "security” or "equity” or "ownership” interest in the collateral under the terms of the lease and requiring notification to be given such lessees of a default and the intention of the lessor to exercise its rights thereunder, as well as notification of lessor’s intent to sell the collateral at a public or private sale.
In the cases cited by defendant, hereinafter discussed, it was the requirement of the lease to have lessee purchase the vehicle at the end of the lease term which persuaded the court’s ruling therein to conclude that such leases provided the lessees with a security interest in the vehicle entitling them to notification of the default and of sale.
To the contrary, under paragraph 14 of the agreement herein, the lessee is given only a "first option to purchase on the scheduled termination of the lease * * * the price to be the fair market value of the vehicle as determined by us in the month of the lease termination”. This option imposed no duty upon lessee to purchase nor did it impose any financial consequence for nonpurchase.
In Credit Car Leasing Corp. v DeCresenzo (138 Misc 2d 726 [Civ Ct, NY County 1988]), however, the lease provided that if the repurchase option of $7,500 was not exercised by lessee, the lessee became obligated to pay $7,500, or failing to do so, on its return or repossession, lessor could sell it and lessee *439 became liable for deficiency, or if sold for more than the option price, lessee would share in the surplus.
Under such terms, the lessee was found to have an "ownership”, "equity” and security interest in the vehicle which entitled it to notification before selling it so that it could do what it was in its legally permissible best interest to protect that interest from loss.
Similarly in Matter of Tillery (571 F2d 1361 [5th Cir 1978]), the repurchase option made lessee liable for loss of value on sale of the vehicle upon a formula stated in the agreement. As in DeCresenzo (supra), the lessee could not choose, without risk of possible loss, as could lessees herein choose, to decline to exercise the option to repurchase.
Defendant further refers to other obligations upon the lessee in support of her claim to a security interest in the lease and the duty to notify her of default and of sale based thereon. These refer to the lessee’s requirement to pay certain incidental taxes, registration and license fees, to keep the vehicle in repair and to provide liability insurance for stated minimum coverages. Similar obligations were provided in the leases in DeCresenzo and in Matter of Tillery (supra). In those cases these items were referred to en passant by those courts after basing the decision upon the onerous, obligatory, repurchase provisions in the subject leases therein. It is therefore doubtful that either of those courts would have found a security interest solely upon the presence of these incidental obligations in the absence of such repurchase requirement.
It is thus concluded that the terms of the lease in the instant case did not provide lessee with a security interest requiring prior notification of default as a holder of a security interest.
Although having no security interest under the lease, lessees were, nevertheless, entitled as "debtors”, pursuant to UCC 9-504 (3), to notification of the time and place of public sale. Such status as debtors separately cloaks them with an "interest” in the disposition of collateral on sale requiring them to be notified prior to the sale. The interest of a debtor is recognized as distinct from that of one having a "security” interest. In Chase Manhattan Bank v Natarelli (93 Misc 2d 78 [1977]), even a "guarantor” under a lease was entitled to notice of sale under UCC 9-504 (3) in the disposition of the collateral. So, also, were accommodation endorsers ruled to be "debtors” under UCC 9-504 (3), and entitled to prior notification of sale (T & W Ice Cream v Carriage Barn, 107 NJ Super 328; see, Annotation, Construction of Term "Debtors", 5 ALR4th 1291 [for other examples]).
*440 The persuasive justification for the requirement of notice to be given to the debtor, apart from his possessing a security interest under the lease, is to give him "an opportunity to bid at the sale, safeguard [any] right of redemption and permit him to reduce his potential liability by utilizing all practical means of doing so” (Fitzpatrick v Bank of N. Y., 125 Misc 2d 1069, 1074 [Civ Ct, Queens County 1984]). "The burden on the creditor to comply with the notice provision is minimal in light of the benefit to the debtor’s ability to protect his or her interest in the collateral” (Credit Car Leasing Corp. v DeCresenzo, supra, at 733). Whether the failure to give such notification bars recovery of a judgment against a nonnotified lessee for a deficiency claimed after such sale has not been uniformly resolved. The cases are divided between those holding that the failure to give such notice is fatal to recovery for a deficiency claimed resulting from a shortfall on the sale (see, Long Is. Trust Co. v Porta Aluminum, 63 AD2d 670 [2d Dept 1978]; Security Trust Co. v Thomas, 59 AD2d 242 [4th Dept 1977]; Avis-Rent-A-Car Sys. v Franklin, 82 Misc 2d 66 [App Term, 2d Dept 1975]; Leasco Computer v Sheridan Indus., 82 Misc 2d 897; Leasco Data Processing Equip. Corp. v Atlas Shirt Co., 66 Misc 2d 1089 [Civ Ct, NY County 1971]), and those holding that the failure to give notice to a "debtor” was not fatal so long as the creditor proves the debt, the fair market value of the security and the resulting deficiency in a trial on an assessment of damages (see, Security Trust Co. v Thomas, 59 AD2d 242 [1977], supra; General Elec. Credit Corp. v Durante Bros. & Sons, 79 AD2d 509 [1980]; Banker’s Trust Co. v Steenburn, 95 Misc 2d 967 [1978], affd 70 AD2d 786; Telmark, Inc. v Lavigne, 124 AD2d 1055 [1986]).
This court views the obligation to notify debtors of the date and place of sale as mandated by UCC 9-504 (3) which cannot be waived unless in compliance with UCC 9-501 (3), by agreement between the parties by standards which are not manifestly unreasonable. In the instant case, what "agreement” there is as to the subject of notice in paragraph 18 of the subject lease is no more than a blanket waiver of the requirement to give any notice of sale to the lessee without setting forth in normally understood words that was lessor’s intention. The employment in paragraph 18 of the phrase, "if this lease is in default we may do all of the following without giving you advance notice”, followed by item "E” therein, "pursue any other remedy the law allows”, is too subtle for the commercially uninitiated lessee to understand that a waiver of *441 notification of sale was imperceptively included therein. The terms of paragraph 18 cannot be deemed in compliance with UCC 9-501 (3) as a substituted standard for the required notification to debtor which is "not manifestly unreasonable”. Such a waiver of notice of lessor’s right to terminate, repossess, and to pursue any other remedy of sale after default goes to the heart of the protections afforded by UCC 9-504 (3), without providing any alternative commercially reasonable procedure to afford the debtor-lessee protection from knowledge of a forthcoming sale of the secured collateral. Thus, the terms of the lease provide no articulated basis upon which to demonstrate compliance with UCC 9-504 (3) or 9-501 (3) nor give legal basis to the court to direct a hearing thereon as was ordered in Marine Midland Bank-Cent. v Watkins (89 Misc 2d 949 [1977]).
The conclusion is thus compelled that no triable issues of fact or law has been presented from which the conclusion could be made that defendant Lillian Terry was not entitled to prior notification of sale; that such notice undisputedly was not given; that the consequences of such statutory breach is that no deficiency judgment may be sought against her under the lease and that she is entitled to summary judgment dismissing the complaint against her (see, Long Is. Bank v Knight, 122 Misc 2d 878 [App Term, 2d Dept 1983]).
Separately, the basis for the decision herein is wholly unaffected by the amendment to UCC 2-A-502 which provides: "[unless] otherwise provided in [UCC article 2] or the lease agreement, the lessor or lessee in default under the lease contract is not entitled to notice of default or notice of enforcement from the other party to the lease agreement”.
This amendment did not become effective until June 30, 1995, over three years after the controlling events of this case, and is not controlling herein.