*231 OPINION OF THE COURT
C. Stephen Hackeling, J.
Ford Motor Credit Company’s complaint, dated June 9, 2004, demands judgment in the sum of $12,216.40 as against the defendant, Evan Esposito, for a default in a motor vehicle lease which resulted in a repossession of the vehicle and its eventual auction sale. The defendant has interposed an answer, dated January 10, 2005, asserting a general denial which was amplified at trial to include an affirmative defense that he did not receive adequate notice of the foreclosure sale. The trial of the matter was conducted on March 7, 2005.
The Undisputed Facts
The relevant undisputed facts established are:
1. The defendant entered into a “motor vehicle lease agreement” (hereafter the lease) dated September 14, 2001 to acquire a 2004 truck with Ramp Ford, who assigned its interest to its financier, Ford Motor Credit Company.
2. The subject motor vehicle was in an accident sometime in October of 2002.
3. At the time of the accident the defendant was in default of his lease (clause No. 21) which required him to maintain comprehensive collision insurance on the vehicle.
4. Clause No. 20 of the subject lease makes the defendant responsible for all nonnormal wear and tear damage to the vehicle. Ford expended $1,370.70 for damage repair and reconditioning of the vehicle prior to sale.
5. The defendant’s lease has a general “anytime option” to purchase the vehicle in clause No. 26. The defendant did not exercise this option.
6. Ford repossessed the subject vehicle on October 25, 2002 from a collision repair shop and sent the defendant a notice to an address in Florida which stated:
“Personal Property Notice — You are hereby notified that the above described motor vehicle was repossessed and we are holding the personal property that was found in the vehicle. The personal property may be reclaimed by you within the next 60 days or, in accordance with state law, by contacting this office. Thereafter, the personal property shall be discarded accordingly.”
7. The repossession sale was originally scheduled for January 7, 2003. An adjourned repossession sale was scheduled for Janu *232 ary 27, 2003. The actual sale occurred on February 4, 2003. No written notice of any sale date was given to the defendant other than the notice referred to in paragraph 6. The sale price of the vehicle was $13,500. Ford expended $1,081.30 in repossession and sale expenses.
8. At the approximate time of sale, Ford assessed that the defendant had $9,237 of monthly payments remaining on his lease and $212.98 of late fees and service charges outstanding as of said date.
9. If the lease had run its full 36-month course, the vehicle’s residual value upon surrender would have been $14,173 (exhibit 1).
Disputed Issues of Fact
The only relevant disputed issues of fact are whether the defendant received the “Notice of Repossession” referred to in paragraph 6 {supra), and whether the defendant received any other notice of sale or notice of proposed charges from any other source. The court finds that the defendant did in fact receive the certified mail notice of repossession and sign the return receipt as indicated in plaintiffs exhibit No. 6. The record reflects no other oral or written notice of sale was given by Ford.
Legal Issues Presented
A. Does New York State law require lessor’s to give notice of a motor vehicle repossession sale or any other notice as a precondition to seeking to collect upon any deficiency existing under a “motor vehicle lease agreement”?
B. Can Ford recover outstanding fees and expenses called for under its lease independently of any liability arising out of its loss of realized value after a motor vehicle foreclosure?
The Law
It is a common misconception that auto “lease” foreclosures are still governed by UCC 9-610 and its predecessor statute UCC former 9-504 (1). Under pre-1995 law the distinction of who was a “secured party” was expansively interpreted to cover most “conditional sale” leases and the foreclosure standard was to conduct a “commercially reasonable sale.” (See, Sheffield Commercial Corp. v Clemente, 792 F2d 282 [2d Cir 1986]; Barco Auto Leasing Corp. v PSI Cosmetics, 125 Misc 2d 68 [Civ Ct, NY County 1984]; Credit Car Leasing Corp. v DeCresenzo, 138 *233 Misc 2d 726 [Civ Ct, NY County 1988].) These sales had no absolute requirement for actual notice of auction sale or to mandate the content of said notice. (See, American Honda Fin. Corp. v Delorio, 260 AD2d 416 [2d Dept 1999].[1]
The State Legislature sought to address the court-created “disguised sale” foreclosure sale deficiency scenario by enacting article 9 of the Personal Property Law. (See, Governor’s Program Bill Mem No. 190R, 1994 NY Legis Ann, at 1-5.) Sections 340, 341 and 343 of the Personal Property Law (added L 1994, ch 1, § 31 [eff Aug. 31, 1995]) were enacted as consumer protection statutes (see, 21 NY Jur 2d, Consumer & Borrower Protection § 238 [“Procedures upon termination without purchase of vehicle”]). These statutes clarify the rights of lease holders as distinct from the rights of secured creditors during a chattel foreclosure. In a secured transaction the vehicle’s equity belongs to the finance debtor. The calculation for determining a deficiency is simply derived by subtracting the sale proceeds from the outstanding note liability. Establishing a lease deficiency is more complex as the vehicle’s equity after the lease term belongs to the finance creditor. When a lease terminates early, the creditor receives the benefit of accelerated possession. It is the intent of the Personal Property Law to require that this benefit must be offset against the lost profits of the remaining lease payments.[2]
Section 341
It is clear from the caption of section 341, “Restriction on early termination liability” (emphasis added), that the New York State Legislature intended to place limitations upon how much automobile lease financiers could charge lessees in the event of a lease termination. The statute provides a very detailed list of potential liability criteria when it provides:
“1. If an agreement is terminated early and there is no option to purchase the vehicle or the lessee does not exercise any option he or she may have to purchase the vehicle, the early termination obligation of the lessee may not exceed an amount equal *234 to the sum of:
“(a) any unpaid rental payments that accrued through the date of early termination;
“(b) any other unpaid charges, other than excess mileage charges, arising from the failure of the lessee to fulfill his or her obligations under the agreement;
“(c) any official fees and taxes imposed in connection with lease termination;
“(d) a reasonable disposition fee or, in lieu thereof, the reasonable costs of retaking, storing, preparing for sale and selling the vehicle;
“(e) the difference, if any, between: (i) the adjusted capitalized cost, and (ii) the sum of all depreciation amounts accrued through the date of early termination, calculated in accordance with the constant yield method or any other generally accepted actuarial method, and the realized value of the vehicle; and
“(f) an additional early termination charge which is reasonable in light of the anticipated or actual harm caused by the default or early termination, the difficulties of proof of loss and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy.
“As an alternative to the constant yield and other generally accepted actuarial methods of determining the depreciation amounts accrued through the date of early termination of a precomputed lease transaction, those amounts may be determined under paragraph (e) of this subdivision by using a retail lease agreement under which the lease charge is calculated on the adjusted capitalized cost for the time outstanding according to a generally accepted actuarial method.
“2. This section does not limit or restrict the manner of calculating the early termination liability of a lessee, whether by way of unamortized capitalized cost, discounted present value of remaining rental payments, multiples of monthly payments or otherwise, so long as the early termination liability of the lessee does not exceed that permitted by this section.” (Emphasis added.)
*235 Accelerated Possession Credit
Section 341 (1) (a), (b), (c) and (f) are fairly simple and straightforward and need little judicial interpretation. Subdivision (1) (e) is complicated and is in essence a “limitation upon lost profit” clause. The statute does not allow Ford to simply charge the debtor for the $9,127.19 of remaining monthly payments. It requires the court to ascertain tax and accountant related terms of art such as “adjusted capitalized cost,” “depreciation amount accrued,” “constant yield methods,” “accepted actuarial methods” and vehicle “realized value.” These concepts are necessary to allow the debtor to recover his “accelerated possession” credit.
Section 340 and Faulty Foreclosure Notices
Personal Property Law § 340 details how the lessor can calculate its section 341 (1) (e) “lost profit” charge by defining how to establish the vehicles “realized value.” Absent an agreement to use a mutual appraisal, section 340 (2) mandates a commercially reasonable sale upon 10 days’ written notice of sale. Section 340 (3) further mandates the “notice of sale” content when it provides:
“3. The notice of intention to sell the vehicle shall set forth separately any charges or sums due under the agreement and shall clearly and conspicuously state that the lessee will be liable for the difference between the estimated residual value of the vehicle and its realized value, if such liability exists. The notice also shall state that the lessee has the right to submit a cash bid for the purchase of the vehicle.”
It is clear to this court that the Legislature intended to bar auto dealers from obtaining recoveries for lost lease profits unless they follow a very precise foreclosure sale procedure which allowed lessees to protect their auto’s “realized value” by making their own bid. In the case at bar no notice of sale was served upon the lessee. What was served is best described as a “Notice of Repossession and Right to Reclaim Personal Property.” This clearly does not meet the section 340 (3) requirements as it does not identify the sale “date” nor the charges due, or the residual value of the car which was $14,173 in this instance. Absent this information, the right to submit a cash bid is meaningless. Ac *236 cordingly, no section 341 (1) (e) lost profit can be recovered.[3] As compliance with sections 340 (2) and (3) are preconditions to establishing a section 341 (1) (e) claim, no section 341 (1) (e) profits can be recovered.
Other Section 341 Damages
The remaining issue is whether Ford’s failure to serve a section 340 (3) notice also bars recovery for the damages identified in section 341 (1) (a) through (d) and (f). The record before the court establishes damages under sections 341 (1) (a), (b) and (d). Section 341 (1) (a) allows Ford to recover the unpaid rental payments due prior to termination. The termination date is the date that Ford repossessed and took possession of the vehicle, which was October 24, 2002. The defendant stopped paying in May of 2002. Ford is entitled to five months at $428.65 which totals $1,634.60.
Ford also seeks to recover section 341 (1) (b) “other lease charges” of $212.98 for late fees and service charges, and a $1,081.35 section 341 (1) (d) “reasonable disposition fee” representing the costs of retaking, storing, preparing for sale and selling the vehicle. Ford also demands $1,370.70 for damage repair/reconditioning of the vehicle prior to sale.
The court has unsuccessfully searched for precedent which will guide it in interpreting the scope of the interplay of sections 340, 341 and 343. Section 341 lays out Ford’s contractual recovery rights and section 340 establishes the computation of “realized value.” Absent express statutory or appellate guidance, this court finds it reasonable to assume that the Legislature did not intend to bar Ford from “any” contractual lease entitlement, only those lost profit recoveries which flow from an improper computation of realized value. By failing to give the section 340 (3) “notice of sale and right to bid” Ford clearly waived its right to recover under section 341 (1) (e). However, it’s right to contractually recover presurrender outstanding lease payments and contractually agreed repossession and restorative charges are not barred by section 340. The defective sale in no way impacted or prejudiced the lessor with regard to those obligations.
As additional support for its holding that section 340’s notice provisions only apply to section 341 (1) (e), the court notes that *237 section 343 has expressly carved out its own separate notice preconditions for section 341 (1) (d) damage recoveries. For Ford to recover its $1,370.70 reconditioning fee, it must give the defendant a specific written “Notice of Defect and Itemized Appraisal.” The lessee is then given a 10-day period to dispute the bill. This extraordinarily complex statute expressly deprives this court of jurisdiction to resolve such a dispute as it requires that the matter be submitted to an arbitration panel established by the Attorney General. No notice of itemized defect was ever served on the defendant by Ford. Accordingly, Ford is barred from recovering its $1,370.70 of reconditioning fees.
The court finds that the defendant breached its contract with Ford and is liable for his presurrender outstanding lease payments, late, service and recovery fees in the sum of $2,725. The court awards judgment to plaintiff against the defendant plus statutory interest from February 4, 2003.

. There was formerly no need to conduct a foreclosure sale of a true lease as unconditional title always remained with the lessee. A true lease was treated as purely a contractual breach with the debtor’s damages being the remaining lease payments. Ford’s complaint seeks $9,237 of such monthly payments.

. See discussion of section 341 (supra); also Personal Property Law § 305 goes so far as to require lessors to give a lessee a “refund credit” for any prepayment.

. In the instant case the sale brought $13,500. Conditioned up a proper sale, the lessor would have been entitled to subdivision (1) (e) damages of $14,173 - $13,500 or $673.